291 A.2d 416.

STATE *vs.* THOMAS GOFF, JR.

JUNE 9, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. Thomas Goff, Jr., a convicted murderer, was serving a life sentence at the maximum security unit of the Adult Correctional Institutions (A.C.I.) when that unit was damaged by fire. He was then transferred to the A.C.I.'s medium custodial unit whence he allegedly escaped on June 2, 1969. After being apprehended in New York on the following day, he was returned to this state and indicted for escaping from the medium custodial unit in violation of G. L. 1956, §11-25-4. He pleaded not guilty and then moved to dismiss the indictment. When that motion was granted in the Superior Court, the state excepted, and it now presses that exception in this court.[1]

The parties have argued the case as if the only issue were how to construe §11-25-4 and we approach it on that basis. That section, insofar as here relevant, provides:

> "Every prisoner confined in the medium or minimum custodial unit of the adult correctional institutions * * * who * * * shall escape * * * shall be fined not more than five hundred dollars ($500) or shall be sen-

---

[1]Under a recent statute, the Attorney General may take exception to any finding, ruling, decision, order or judgment of the Superior Court and may prosecute his bill of exceptions to this court at any time before the defendant has been placed in jeopardy. P. L. 1968, ch. 234, sec. 1, now codified as G. L. 1956 (1969 Reenactment) §9-24-32.

tenced by the court to a term of imprisonment in the adult correctional institutions for not more than five (5) years."

The defendant agrees that this enactment standing alone supports the indictment. He argues, however, that it should not be read in isolation, but that it should be considered contextually with the other provisions which together with it comprise the overall legislative scheme for dealing with escapes. More particularly, he contends, it should be considered in pari materia with §11-25-2, which states:

"Every prisoner confined in the maximum custodial unit * * * who * * * shall escape * * * shall be sentenced by the court to a term of imprisonment in the adult correctional institutions for not less than one (1) year nor more than twenty (20) years, *except where the original sentence was imprisonment for life,* said term to commence from the expiration of the original term of such prisoner." (emphasis added.)

As defendant reads this section, the italicized clause modifies "Every prisoner confined in the maximum custodial unit" and not "said term to commence from the expiration of the original term of such prisoner." Thus, he continues, the section exempts escaping life termers from judicial punishment. Noting the absence of a similar provision in §11-25-4, defendant then argues in his brief that §§11-25-2 and 11-25-4 are inconsistent and would produce a patently unreasonable result if read so as "to exclude from sentencing those serving a life sentence if they escaped from maximum security but not to exempt those serving life sentences if they escape from medium-minimum security." Such a construction, he argues, should be avoided if at all possible. And his suggested method of avoidance is, in effect, to construe the italicized language of §11-25-2 as moving "beyond the realm of the usual judicial machinery" a prisoner who, while serving a life sentence, escapes from the maximum custodial unit of the A.C.I., and then to read that language, so construed, into §11-25-4.

We, of course, agree that inconsistent statutory provisions should be construed and applied, if at all possible, so as to avoid that inconsistency, *State* v. *Haggerty,* 89 R. I. 158, 151 A.2d 382 (1959), and that they should not be applied literally if to do so would produce a patently absurd or unreasonable result. *Coletta* v. *State,* 106 R. I. 764, 263 A.2d 681 (1970); *Wilkinson* v. *Harrington,* 104 R. I. 224, 243 A.2d 745 (1968); *Scituate* v. *O'Rourke,* 103 R. I. 499, 239 A.2d 176 (1968); *Genereux* v. *Pelosi,* 96 R. I. 452, 192 A.2d 630 (1963).

While we may agree with defendant that an appropriate, and perhaps a preferred way, to avoid an inconsistent and unreasonable construction is to incorporate the critical portion of §11-25-2 into §11-25-4 does not mean that we also concur with his further contention that the questioned §11-25-2 language should be read as allowing a lifer who escapes from the A.C.I. to go scot-free.

Initially, defendant attempts to support his construction by arguing that the Legislature intended that an escaping lifer would receive his due, not from the courts, but from the parole board which, in reviewing his record, would be expected to consider "such violations as escape in determining the feasibility of granting [his] request for parole." That argument obviously lacks any merit whatsoever. Nothing in the escape statutes even remotely alludes to such an intention, and in addition the critical §11-25-2 language antedates, by many years, the inception of our present-day parole system. *Compare* G. L. 1896, ch. 276, §14 *with* P. L. 1915, ch. 1186.

More importantly, however, defendant's suggested explanation of the pertinent §11-25-2 language negates the clear purpose of the escape statutes which is "to deter escapes" and "to insure the imposition of additional punishment for the crime of escape, independent of any other sentence under which a prisoner was serving or being held."

*State* v. *D'Amico,* 92 R. I. 194, 198, 167 A.2d 542, 543 (1961).

When we keep in mind what we said in *D'Amico,* it seems abundantly evident that the Legislature could not have intended to favor a life termer by exempting him from judicial punishment. A literal reading which produces that result would, in our judgment, be patently absurd and therefore should be avoided. We do so by transposing the last two clauses of §11-25-2 and then construing the section as if it read:

> "Every prisoner confined in the maximum custodial unit * * * who * * * shall escape * * * shall be sentenced by the court to a term of imprisonment in the adult correctional institutions for not less than one (1) year nor more than twenty (20) years, said term to commence from the expiration of the original term of such prisoner except where the original sentence was imprisonment for life."

So read, the last two clauses of §11-25-2 state the obvious, *viz.,* that any sentence of a life termer for escape, while it may be concurrent, should not, and realistically cannot, be added to a life sentence.

The state's exception is sustained and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Henry Gemma, Jr.,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* for defendant.