Timothy BRENNAN et al.

v.

Patrick G. KIRBY et al.

v.

Paul PREUIT et al.

v.

TOWN OF MIDDLETOWN et al.

No. 86–401–Appeal.

Supreme Court of Rhode Island.

July 28, 1987.

**634**

Kathleen Managhan, Newport, for Brennan et al.

Joseph R. Palumbo, Middletown, for Preuit et al.

Alan P. Jurista, Middletown, Maryjo Carr, Newport, for Kirby et al.

James E. O'Neil, Atty. Gen., A. Peter Loveley, Sp. Asst. Atty. Gen. for the State of Rhode Island.

Sandra Blanding, Providence, for FOP.

B. Mitchell Simpson, Middletown, for Town of Middletown, et al.

Joseph A Kelly, Adrienne G. Southgate, Providence, for Governor DiPrete.

Lynette Labinger, Ina P. Schiff, Providence, for R.I. State Police Associates.

Norman Benoit, Providence, for R.I. League of Cities and Towns.

## OPINION

FAY, Chief Judge.

This case is before the court on a question certified to it by the Superior Court pursuant to G.L. 1956 (1985 Reenactment) § 9–24–27.[1] The backdrop for this action is as follows.

The plaintiffs in *Brennan v. Kirby* filed suit for declaratory relief against the city manager, treasurer, and councilors of the city of Newport on March 26, 1985.[2] In their complaint plaintiffs asked the Superior Court to render a determination of their seniority rights under G.L. 1956 (1982 Re-enactment) §§ 30–21–3 and 30–22–3, and to issue a writ of mandamus to the city officials ordering them to extend seniority credits to eligible plaintiffs. On June 24, 1985 the General Assembly enacted P.L. 1985, ch. 181, art. 64, which purported retroactively to repeal § 30–21–3.

On June 5, 1986, the plaintiffs in *Preuit v. Town of Middletown* filed suit in Newport County Superior Court to enforce seniority rights under §§ 30–21–3 and 30–22–3 and to declare P.L. 1985, ch. 181, art. 64 unconstitutional.[3] On June 5, 1986, the Attorney General moved the court to permit the department to intervene in the case of *Brennan v. Kirby.* On June 17, 1986, the town of Middletown filed a motion in its case, pursuant to §§ 9–24–25[4] and 9–24–27, to certify the question of the constitutionality of P.L. 1985, ch. 181, art. 64 to this court. The city of Newport filed a similar motion in its case on June 20, 1986. The Attorney General, on June 25, 1986, filed a motion to intervene in the case of *Preuit v. Middletown* and joined in both Middletown's and Newport's respective motions to certify.[5]

---

1. General Laws 1956 (1985 Reenactment) § 9–24–27 reads:

 "Certifications of questions of importance to the supreme court.—Whenever in any proceedings, civil or criminal, legal or equitable, in the superior court or in any district court, any question of law shall arise, or the constitutionality of an act of the general assembly shall be brought in question upon the record, which in the opinion of the court, or in the opinion of the attorney-general, if the state be a party to such proceeding or if he has intervened therein, is of such doubt and importance and so affects the merits of the controversy that it ought to be determined by the supreme court before further proceedings, the court in which the cause is pending shall certify such question or motion to the supreme court for that purpose and stay all further proceedings until the question is heard and determined; Provided, That no question shall be so certified in any criminal case where the defendant has not been released on bail."

2. In *Brennan v. Kirby* twenty plaintiffs sued officials of the city of Newport. Eighteen of those twenty individuals are currently employed as police officers for the city, one individual is employed as a city firefighter, and one plaintiff is a retired member of the city police force.

3. Six individuals sued the town of Middletown in *Preuit v. Middletown.* Four of the six are currently employed as police officers for the town, one is a retired police officer of the town, and the sixth plaintiff is a retired police officer currently employed with the town as Deputy Finance Director.

4. Section 9–24–25 states:

 "Certification to supreme court on agreed statement of facts.—Whenever any civil action, legal or equitable in character, is pending in a district court or in a superior court, and the parties shall file in the clerk's office an agreed statement of facts in such action, the court shall certify the action to the supreme court to be there heard and determined. After having decided the action, the supreme court shall send back the papers therein, with its decision certified thereon, to the court from which the action was certified, which shall enter final judgment upon the decision."

5. The Rhode Island League of Cities and Towns filed a similar motion to intervene. Detective Lt. Richard Quinn, individually and as president of the Rhode Island State Police Associates, and Trooper Alvin T. Pontarelli, individually and as president of the Rhode Island State Police

Hearings on the certification motions were entertained by a justice of the Superior Court on June 25, July 21, and September 12, 1986. The trial justice indicated his willingness to certify the constitutionality question to this court pursuant to § 9–24–27 if the Attorney General indicated that the issue raised a "question of law \* \* \* of such doubt and importance \* \* \* [so affecting] the merits of the controversy that it ought to be determined by the supreme court before further proceedings \* \* \*." *See* § 9–24–27. The Attorney General so indicated and the following question was certified to this court:

"Is Section 64 of Chapter 181 of the Public Laws of 1985 (which repealed R.I. G.L. § 30–21–3) valid under Article 1 Sections 12 and 16 of the Constitution of the State of Rhode Island; Article I Section 10 and the Fifth and Fourteenth Amendments to the United States Constitution; and pursuant to R.I.G.L. § 43–3–22; as to all persons whose claims are based upon assertions that they satisfied the statutory criteria of R.I.G.L. § 30–21–3 and § 30–22–3 prior to June 25, 1985?" [6]

Section 30–21–3 reads:

"Seniority in new employment.—Any member of the armed forces of the United States or any citizen of the United States who served in the armed forces of the United Nations during World War II shall, upon proper proof of his service

and the length thereof, upon applying for employment within one (1) year after his honorable discharge from said forces, shall possess and be given credit for seniority rights equal to the time he served in said forces."

Section 30–22–3 reads:

"Extension to veterans of undeclared wars or campaigns.—The provisions of all of the statutes of this state granting benefits or privileges to veterans of any war in which the United States of America has heretofore been engaged, or to the widow or other surviving kin of deceased veterans of any such war, shall hereafter be construed to provide for like benefits and privileges for any man or woman of the armed forces, who has been engaged heretofore, is now, or may hereafter be engaged in the active conduct of and/or fighting in the Korean campaign or the conflict in Viet Nam or any following campaign or war, declared or undeclared, which the armed forces of the United States of America conduct or in which said forces have a part, and who, having been actively engaged as hereinbefore described, has heretofore or may hereafter be honorably discharged from the armed forces of this nation, and to the widow or other surviving kin of any such deceased veteran of said campaign or war. For the purposes of this section, 'Active conduct of and/or fight-

---

Lodge No. 25 Fraternal Order of Police (who were plaintiffs in similar pending federal litigation) filed a motion for leave to appear as amici curiae. The motions of the Rhode Island League of Cities and Towns and Quinn and Pontarelli were left to be acted upon by this court. We permitted briefs amici curiae to be filed in this court on behalf of the Governor of the State of Rhode Island, the Rhode Island League of Cities and Towns, Richard Quinn et al, and the Warwick Fraternal Order of Police Lodge No. 7.

**6.** Rhode Island Constitution, art. I, §§ 12 and 16 state:

"§ 12. Ex post facto laws—Obligation of contract.—No ex post facto law, or law impairing the obligation of contracts, shall be passed."
"§ 16. Compensation for private property.— Private property shall not be taken for public uses, without just compensation."
United States Constitution, Art. I, § 10 in pertinent part states:

"No state shall \* \* \* pass any \* \* \* law impairing the obligation of contracts \* \* \*."
United States Constitution, Amends. V and XIV in pertinent part read:

Amend. V—"No person shall \* \* \* be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."
Amend. XIV—"No state shall \* \* \* deprive any person of life, liberty, or property, without due process of law \* \* \*."
General Laws 1956 (1980 Reenactment) § 43–3–22 states:

"Effect of repeal on prior rights and proceedings.—The repeal of any statute shall in no case affect any act done, or any right accrued, acquired or established, or any suit or proceeding had or commenced in any civil case before the time when such repeal shall take effect."

ing in the conflict in Viet Nam' shall mean service by any man or woman of the armed forces of the United States on and after August 5, 1964."

And P.L. 1985, ch. 181, art. 64 (hereinafter article 64), as enacted by the Legislature states:

"SECTION 1. Section 30–21–3 of the General Laws in Chapter 30–21 entitled 'Employment of Veterans' is hereby repealed in its entirety.

"The remedy for any alleged violation of section 30–21–3 of the general laws including any pending cases providing for veterans' benefits in connection with employment, including, without limitation, any seniority rights, shall be limited to prospective injunctive relief and shall not include any award of damages, back pay, attorneys' fees, or any retroactive redress for any alleged past violations.

"The provisions of this article are deemed to be severable and the invalidation of any particular provision or section hereof shall not be deemed to affect the validity of any other provisions or sections, all of which are deemed to be independent.

"SECTION 2. This article shall take effect upon passage and shall be given retroactive effect."

Before addressing the specific issues raised in the certified question, we think it imperative to clarify the meaning of article 64. It has been suggested by plaintiffs that article 64 is ambiguous because it expresses two conflicting intents. The plaintiffs argue that on the one hand the first paragraph of article 64, section 1, when read in conjunction with section 2 of article 64, repeals § 30–21–3 retroactively; however, the second paragraph of section 1 also indicates that the remedy for alleged violations of § 30–21–3 is limited to prospective-injunctive relief. In light of article 64 language, plaintiffs question whether the Legislature intended to repeal and/or whether it, in fact, did repeal § 30–21–3. The fact that the Legislature prescribed a prospective-injunctive remedy for violations of § 30–21–3, according to plaintiffs, is evidence that seniority rights under § 30–21–3

still survive. We must disagree. Article 64 repealed § 30–21–3 and extinguished all pending suits brought pursuant to that statute.

■ The construction of legislative enactments is a matter reserved for the courts, *Fruit Growers Express Co. v. Norberg*, 471 A.2d 628, 630 (R.I.1984), and, as final arbiter on questions of construction, it is this court's responsibility in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes. *Gryguc v. Bendick*, 510 A.2d 937, 939 (R.I.1986).

■ In performing this function the court must attempt to ascertain the intent by considering the enactment in its entirety and by viewing it in light of circumstances and purposes that motivated its passage. *Shulton, Inc. v. Apex, Inc.*, 103 R.I. 131, 134, 235 A.2d 88, 90 (1967). A statute or enactment may not be construed in a way that would attribute to the Legislature an intent that would result in absurdities or would defeat the underlying purpose of the enactment, *City of Warwick v. Aptt*, 497 A.2d 721, 724 (R.I.1985), nor may it be construed, if at all possible, to render sentences, clauses, or words surplusage. *State v. Gonsalves*, 476 A.2d 108, 110–11 (R.I.1984). Moreover, we have indicated that when apparently inconsistent statutory provisions are questioned, every attempt should be made to construe and apply them so as to avoid the inconsistency and should not be applied literally if to do so would produce patently absurd or unreasonable results. *State v. Goff*, 110 R.I. 202, 205, 291 A.2d 416, 417 (1972). The same principle should apply where apparent inconsistencies exist within the same statute or enactment.

■ The Legislature must be presumed to know how to amend and repeal statutes. Therefore, the Legislature must also be presumed to have known what it was doing when it enacted article 64. Consequently, it must follow that if the Legislature had intended merely to limit the remedies available for violations of § 30–

21-3 to prospective-injunctive relief, it would have done so by simply leaving the existing statute intact and adding the second paragraph of section 1 of article 64 to § 30-21-3. Otherwise, to suggest as plaintiffs have that article 64 does not repeal § 30-21-3 but merely attempts to limit liability renders the repeal language in article 64 meaningless.

In addition, it is likely that the Legislature knew of the existence of pending federal and state suits brought to enforce § 30-21-3 and that it was cognizant of at least the possibility that the retroactive repeal of § 30-21-3 might succumb to a constitutional challenge in the courts. Because of this, we are persuaded that the Legislature added paragraph 2 to section 1 with the intent that it would operate to limit the remedies available to prevailing claimants if the repeal proved invalid. This is the only reasonable explanation for the existence of the two conflicting paragraphs. We are convinced that this is so because article 64, section 1, contains a separate severability clause that declares, in essence, that if either paragraph 1 or paragraph 2 of section 1 is held to be invalid the remainder of article 64 will remain viable.

For these reasons we find that article 64 by its terms retroactively repealed § 30-21-3 in its entirety, including pending actions and remedies thereunder. Having reached that conclusion, we now turn to the issues raised by the certified question.

I

DOES ARTICLE 64 VIOLATE THE CONTRACT CLAUSE OF EITHER THE UNITED STATES CONSTITUTION OR THE RHODE ISLAND CONSTITUTION?

■ The Contract Clause of the United States Constitution, as well as the Rhode Island Constitution, limits the power of this state to modify its own contracts and to regulate private contracts.[7] *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). Although the language of the clause, which boldly declares that no state shall pass laws impairing contractual relations, would, on its face, appear to present an absolute bar to impairment, the United States Supreme Court has refused to read the language with literal exactness. *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 428, 54 S.Ct. 231, 236, 78 L.Ed. 413, 423 (1934) ("the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula"). A legislative enactment will pass constitutional muster under contract clause analysis so long as it is reasonable and necessary to carry out a legitimate public purpose. *United States Trust Co. of New York*, 431 U.S. at 25-26, 97 S.Ct. at 1519, 52 L.Ed.2d at 112.

As a prerequisite to embarking upon an application of contract clause analysis, it is necessary for us to determine whether § 30-21-3 created a valid contractual relationship between the parties. The Supreme Court has steadfastly adhered to the principle that absent a clear indication by the Legislature that it intended to bind itself contractually by passing an enactment, the presumption pervades that "[the] law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Dodge v. Board of Education of Chicago*, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57, 62 (1937). The party asserting the creation of a statutory contract bears the weighty burden of overcoming this presumption, *id.*, and the court for its part will be cautious in identifying a contract within the language of the statute and in defining the parameters of any contractual obligation it might detect. *National Railroad Passenger Corp. v. Atchi-*

---

7. *See* U. S. Const., Art. I, § 10, cl. 1. The Rhode Island Constitution also contains a prohibition against laws that impair contractual obligations. *See* R.I. Const., art. I, § 12. This provision mirrors the Contract Clause of the United States Constitution. We have never indicated that R.

I. Const., art. I, § 12 places any greater restrictions on state legislation than the identical provision of the Federal Constitution and we do not take the opportunity to do so today. Consequently, we will rely on federal case authority in this area.

*son, Topeka & Santa Fe Railway Co.,* 470 U.S. 451, 466, 105 S.Ct. 1441, 1452, 84 L.Ed.2d 432, 446 (1985).

The court looks first to the statutory language in determining whether a particular statute gives rise to a contractual obligation. *Dodge,* 302 U.S. at 78, 58 S.Ct. at 100, 82 L.Ed. at 61. If the language of the statute provides for the execution of a written contract on behalf of the state then clearly a binding obligation is created; however, absent an adequate expression of actual intent to bind the state, the court will not be so quick to construe a statute as a private contract to which the state is bound as a party. *National Railroad Passenger Corp.,* 470 U.S. at 466–67, 105 S.Ct. at 1452, 84 L.Ed.2d at 446.

Section 30–21–3, in our opinion, represents merely a legislative policy declaration. Therefore, since § 30–21–3 .does not adequately express an actual intent to contractually bind the state or its political subdivisions, we find no violation of either the Federal or State Constitution's Contract Clause.

II

DOES ARTICLE 64 CONTRAVENE THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION?

The plaintiffs contend that the Legislature in promulgating article 64 retroactively deprived them of a vested right in contravention of their due process rights under the Federal Constitution. We find no such violation.

 It is a well-settled principle of constitutional analysis that legislative enactments are presumed to be constitutional. *S & S Liquor Mart, Inc. v. Pastore,* 497 A.2d 729, 734 (R.I.1985). A party challenging the constitutional validity of an act carries the burden of persuading the court that the act violates an identifiable aspect of the State or Federal Constitution. *Boucher v. Sayeed,* 459 A.2d 87, 92 (R.I. 1983). In addition, we have stated with regard to retroactive legislation that it, like

prospective legislation, must meet the test of due process. *Lawrence v. Anheuser-Busch, Inc.,* 523 A.2d 864, 869 (R.I.1987).

 Earlier this term in *Lawrence,* we were asked to determine whether the Legislature's retroactive imposition of liability under the 1979 revised Rhode Island Dram Shop Act constituted a due process violation. We examined the act using the approach suggested by Charles B. Hochman in his article, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692 (1960), and first adopted by this court in *Raymond v. Jenard,* 120 R.I. 634, 638, 390 A.2d 358, 360 (1978). After having reviewed the Supreme Court's decisions on the topic of retrospective legislation, Hochman concluded that

"the factor most often appearing in these cases is the extent to which the parties have laid reasonable reliance on the law existing at the time of the conduct whose legal consequences the retroactive statute would alter. * * * [T]he two major factors to be weighed in determining the validity of a retroactive statute are the strength of the public interest it serves and the unfairness created by its retroactive operation, and the reliance of the parties on preexisting law is perhaps the most accurate gauge of the latter." 73 Harv. L. Rev. at 727.

We noted in *Lawrence* that recent Supreme Court decisions continued to support Hochman's balancing test. 523 A.2d at 870. The Court in *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), sustained the retroactive effects of the Federal Coal Mine Health and Safety Act of 1969 as amended by the Black Lung Act of 1972 that required coal-mine operators to compensate former employees disabled by pneumoconiosis, even though those employees had terminated their work in the industry before the statute was enacted. Because the mine operators had known of the existence of the dangers posed by pneumoconiosis for twenty years, and because there was no evidence that they would have altered their conduct had the law im-

posed liability on them from the outset, the Court concluded that the act was justified as a rational means "to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor * * *." 428 U.S. at 18, 96 S.Ct. at 2893, 49 L.Ed.2d at 768.

In *Pension Benefit Guaranty Corp. v. R. A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), the Court's latest case on retroactive legislation, the Congress had created a governmentallyrun retirement plan termination insurance program to ensure that employees would not be deprived of anticipated benefits if their plans terminated prior to the accumulation of sufficient funds. Under the act, the Pension Benefit Guaranty Corporation (PBGC) would collect premiums from covered-pension plans and provide benefits to employees in those plans if their plan terminated with insufficient assets to support guaranteed benefits. In addition, a subsequent amendment to the statute imposed on employers participating in private multiemployer retirement plans, and who withdrew from such plans, liability to PBGC for the employer's proportionate share of that plan's "unfunded vested benefits." Such liability was given a retroactive effective date.

Although the Court in *Pension Benefit* did not explicitly articulate its reliance on the earlier balancing test of *Turner Elkhorn*, it nevertheless stated that the retrospective aspects of legislation would meet the test of due process if the retroactive application of the act was justified by a rational legislative purpose. 467 U.S. at 730, 104 S.Ct. at 2718, 81 L.Ed.2d at 611. And since the employers affected by the retroactive liability in *Pension Benefit* had advance notice that liability might be imposed and, therefore, had the opportunity to conform to the requirements of the act, no due-process violation existed. *Id.* at 732, 104 S.Ct. at 2719, 81 L.Ed.2d at 613.

Applying the Hochman balancing test in *Lawrence*, we determined that the tavern, although cognizant of the dangers of serving intoxicated persons, most likely would have altered its conduct had it known of its potential liability for damages because

"unlike the mine operators in *Turner Elkhorn*, whose economic survival depended upon the miners' working in the mine and who could have altered the conditions causing pneumoconiosis only at great expense and with little hope of success, the tavern did not face extinction, or even the radical diminution of its business, by refusing to serve liquor to an intoxicated person; thus it could have done so with little difficulty." *Lawrence*, 523 A.2d at 871.

In light of this reliance by the tavern and the consequential unfairness of applying retroactive liability, we found the countervailing public interest, although certainly significant, to be less weighty. *Id.* at 871.

Although it is true that the cases of *Turner Elkhorn*, *Pension Benefit*, and *Lawrence* all involved retrospective imposition of liability, we believe their balancing approach to be no less applicable to the extinguishing of seniority benefits under article 64.

Article 64 comports with due process if the Legislature's retroactive repeal of § 30–21–3 is rational and not arbitrary in nature, *Turner Elkhorn*, 428 U.S. at 15, 96 S.Ct. at 2892, 49 L.Ed.2d at 766, or so long as it is not particularly "harsh and oppressive." *Pension Benefit Guaranty Corp.*, 467 U.S. at 733, 104 S.Ct. at 2720, 81 L.Ed.2d at 613, (quoting *Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 126, 83 L.Ed. 87, 93 (1938)). Retroactive legislation is deemed to be rationally based and therefore constitutional if, by examining its explicit and implicit purposes and justifications, it can be concluded that the public interest in retroactivity outweighs the unfairness of retroactivity, the latter being measured best by the party's reliance on the preexisting state of the law. 73 Harv. L. Rev. at 727.

■ In this particular case, the degree of unfairness to plaintiffs is negligible because they never relied upon § 30–21–3 when they applied for and accepted municipal employment. And there is absolutely no evidence to suggest that they would

have foregone municipal employment had they been aware that no seniority benefits would be credited.

Against this we must balance the public interest. Obviously the public interest in retroactive repeal of § 30–21–3 is to avoid the unanticipated potential for financial calamity that would beset the state and municipalities, as well as private employers within the state, if they were now required to credit plaintiffs with seniority benefits for prior military service. While plaintiffs have argued that such potential liability is as yet speculative at best and therefore not a proper factor to be considered by this court, it takes no mathematical wizardry to realize the potential financial burden that a viable § 30–21–3 would impose on the public and private employers within the state if they were burdened with retroactive salary adjustments, vacation leave, longevity benefits and other advancements for their eligible employees. Under these circumstances, we find the public interest to greatly outweigh the minimal degree of unfairness to plaintiffs. Consequently, article 64 is justified by a rational legislative purpose and comports with substantive due process requirements under the Fourteenth Amendment.

## III

DOES ARTICLE 64 VIOLATE THE TAKING CLAUSE OF EITHER THE RHODE ISLAND OR FEDERAL CONSTITUTION?

■■■ Article 64 does not violate either R. I. Const., art. I, § 16 or U.S. Const., Amend. V, as applied to the states through the Fourteenth Amendment. The seniority rights or benefits conferred on eligible veterans by § 30–21–3 are merely gratuities or floating expectancies until actually received by the employee. *Nick v. Montana Department of Highways,* 711 P.2d 795, 799 (Mont.1985) (citing *Monaco v*

United States, 523 F.2d 935, 940 (9th Cir. 1975), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976)); *see also Lynch v. United States,* 292 U.S. 571, 577, 54 S.Ct. 840, 842, 78 L.Ed. 1434, 1439 (1934) (pensions, compensation allowances and privileges are gratuities). Because they are gratuities and do not represent private property, their dissolution by the Legislature merits no just compensation. *Cf. Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231, 234 (1971) (the interest of a welfare recipient in the continued payment of benefits is, as a matter of procedural due process, sufficiently fundamental to require a prior evidentiary hearing before termination; however, social-welfare benefits are not synonymous with private property so as to require constitutional limits on a Legislature's ability to change the guidelines for entitlement to those benefits).

## IV

DOES § 43–3–22 OPERATE TO SAVE § 30–21–3 FROM REPEAL?

■■■ The plaintiffs, in the alternative, argue that G.L. 1956 (1980 Reenactment) § 43–3–22 operates to save § 30–21–3 from legislative repeal. Section 43–3–22 is a general-savings clause that says a statutory repeal will not extinguish "any act done, or any right accrued, acquired or established or any suit or proceeding had or commenced" before the repeal becomes effective. Although this language seemingly speaks in absolute terms, we have stated with regard to its criminal counterpart, § 43–3–23,[8] that the general-savings clause does not purport to limit or bind subsequent Legislatures and that it will only operate to save pending proceedings if such construction would not be clearly repugnant to the express provisions of the repealing statute. *State v. Lewis,* 91 R.I. 110, 115–16, 161 A.2d 209, 212 (1960).

---

**8.** Section 43–3–23 states:
"Effect of repeal on criminal prosecutions. —No suit, prosecution or indictment, pending at the time of the repeal of any statute for any offense committed, or for the recovery of any fine, forfeiture or penalty, incurred under the statute so repealed, shall in any case be affect-ed by such repeal, but such suit, prosecution or indictment, may be proceeded with, and such act shall be deemed to be in force for the purpose of prosecuting the same to final judgment and execution or sentence, as the case may be."

Moreover, we note that § 43–3–26 states that when a general provision conflicts with a specific provision, the specific provision is controlling.

"Conflicting general and special provisions.—Wherever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in such cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision." Section 43–3–26.

In this case § 43–3–22 is the general provision while article 64 is specific. Since article 64 clearly indicates the Legislature's intent to repeal § 30–21–3 retroactively, it controls. Therefore, § 43–3–22 does not save §.30–21–3 from repeal.

Accordingly, the question certified to this court is answered in the affirmative, and the papers in the case are remanded to the Superior Court with our decision endorsed thereon.