William J. PATTY, Barry F. Aneda, David G. Blackwell, Raffaele G. Conte, John J. Doris, Jr., Brian E. Fisette, Glenn R. Graham, William P. Harrington, Francis M. Kennedy, Robert D. King, John P. Mahoney, George L. Mendonca, Charles F. Miller, Neil Provorse, Robert C. Reith, and Daniel S. Ryan

v.

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY, A NYNEX COMPANY, Nynex Corporation, American Telephone and Telegraph Corp., American Telephone and Telegraph Information Systems.

Civ. A. No. 86–0665 L.

United States District Court, D. Rhode Island.

Sept. 27, 1990.

Ina Schiff, Providence, R.I., for plaintiffs.

William Robinson, Edwards & Angell, Providence, R.I., for Amer. Tel. & Tel. Corp. & Amer. Tel & Tel. Information Systems.

Christine Gravelle, John E. Bulman, Normand Benoit Tillinghast Collins & Graham, Providence, R.I., for New England Tel & Tel.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This is the last of a series of veteran preference cases filed in this Court. It is before the Court on defendants' motions to dismiss for failure to state a claim for which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Upon due consideration, defendants' motions are granted for the reasons hereinafter set forth.

In this case, plaintiffs, sixteen telephone company employees, allege that defendants' failure to grant them enhanced seniority status, as provided under R.I.Gen. Laws §§ 30–21–2 and 30–21–3, constitutes a deprivation of their civil rights. The relevant sections of Rhode Island statute law, enacted after World War II, were designed to provide employment seniority benefits for veterans equal to their years of military service, upon their return to civilian employment. Plaintiffs' complaint takes the form of a 42 U.S.C. § 1983 claim against defendant corporations, based upon the abrogation of plaintiffs' Fourteenth Amendment rights to due process and equal protection of the laws. Plaintiffs further seek a declaratory judgment that the Rhode Island legislature's retroactive repeal of R.I.Gen.Laws § 30–21–3 is unconstitutional.

## FACTUAL BACKGROUND

### Legislative Background

In 1945 the Rhode Island General Assembly enacted a law designed to provide veterans with job seniority credits for their years of military service. Rhode Island General Laws, Section 30–21–3, enabled a veteran starting a new job to receive seniority credit for military service.[1] Section 30–21–2 provided "bridging" of seniority credit for veterans returning to the same jobs they had left to go to war.[2] In 1953,

---

1. R.I.Gen.Laws § 30–21–3 provides:

   Seniority in new employment.—Any member of the armed forces of the United States or any citizen of the United States who served in the armed forces of the United Nations during World War II shall, upon proper proof of his service and the length thereof, upon applying for employment within one (1) year after his honorable discharge from said forces, shall [sic] possess and be given credit for seniority rights equal to the time he served in said forces.

2. Section 30–21–2 provides:

   Seniority rights on reemployment by prior employer.—Any member of the armed forces of the United States or any citizen of the United States who served in the armed forces of the United Nations during World War II shall, upon his reemployment by a prior employer within one (1) year after his honorable discharge from said forces, upon proper proof of his service and the length thereof, be given by such employer in addition to the seniority rights he had when he left said employment, prior to his joining the armed forces, additional seniority rights equal to the time he served in said forces.

and again in 1968, the General Assembly extended the scope of the statutes to cover veterans of Korea, Viet Nam and other conflicts.[3] Over the years, Section 30–21–2 was enforced by the State and its municipalities, while Section 30–21–3 was consistently ignored. In the 1980's, a group of Viet Nam veterans (mostly state and municipal employees) discovered the forgotten section and sought to have their seniority status retroactively adjusted. Concerned about the potential economic burden on taxpayers, the General Assembly retroactively repealed Section 30–21–3, in its entirety, on June 24, 1985. 1985 R.I.Pub. Laws, ch. 181, art. 64.[4] Section 30–21–2 remains in place.

### Judicial background

The rash of litigation initiated by veterans seeking seniority adjustments was not quelled by the repeal. In fact, constitutional challenges to the repeal were soon added to pending actions. In a state court suit brought by a group of municipal employees against the City of Newport and the Town of Middletown, the question of the repeal's constitutionality was certified to the Rhode Island Supreme Court. In a unanimous decision issued by Chief Justice Fay, that Court determined that the retroactive repeal did not violate any provisions of the United States or Rhode Island Constitutions, or the state's "general savings clause," R.I.Gen.Laws § 43–3–22.[5] *Brennan v. Kirby*, 529 A.2d 633 (R.I.1987).

In addition, several suits remained and others were subsequently brought in this District Court. In *West v. Town of Bristol*, 712 F.Supp. 269 (D.R.I.1989), this writer dismissed a class action suit brought by veterans against the Town of Bristol, the State and certain state officials. Thereafter, this writer dismissed four other such cases based on the reasoning in *West*. Then, Chief Judge Boyle dismissed five and Judge Torres dismissed two such class action suits against state officials and employer municipalities based on the federal constitutional analysis developed in *West*. The only appeals were in *Hoffman v. City of Warwick* and *Langlois v. City of East Providence*, the two cases heard by Judge Torres. In that consolidated appeal brought earlier this year by the *Hoffman* and *Langlois* plaintiffs, the United States Court of Appeals for the First Circuit upheld the dismissal of the veterans' claims. *Hoffman v. City of Warwick*, 909 F.2d 608 (1st Cir.1990).

### The complaint

In the case *sub judice*, plaintiffs are sixteen veterans, seven from the Navy,

---

**3.** This was codified as R.I.Gen.Laws § 30–22–3, which provides:

Extension to veterans of undeclared wars or campaigns.—The provisions of all of the statutes of this state granting benefits or privileges to veterans of any war in which the United States of America has heretofore been engaged ... shall hereafter be construed to provide for like benefits and privileges for any man or woman of the armed forces, who has been engaged heretofore, is now, or may hereafter be engaged in the active conduct of and/or fighting in the Korean campaign or the conflict in Viet Nam or any following campaign or war, declared or undeclared, which the armed forces of the United States of America conduct or in which said forces have a part, and who, having been actively engaged as hereinbefore described, has heretofore or may hereafter be honorably discharged from the armed forces of this nation ...

**4.** The Repeal Statute provides:

SECTION 1. Section 30–21–3 ... is hereby repealed in its entirety.

The remedy for any alleged violation of section 30–21–3 of the general laws including any pending cases providing for veterans' benefits in connection with employment, including, without limitation, any seniority rights, shall be limited to prospective injunctive relief and shall not include any award of damages, back pay, attorneys' fees, or any retroactive redress for any alleged past violations.

The provisions of this article are deemed to be severable and the invalidation of any particular provision or section hereof shall not be deemed to affect the validity of any other provisions or sections, all of which are deemed to be independent.

SECTION 2. This article shall take effect upon passage and shall be given retroactive effect.

**5.** Section 43–3–22 provides:

Effect of repeal on prior rights and proceedings.—The repeal of any statute shall in no case affect any act done, or any right accrued, acquired, or established, or any suit or proceeding had or commenced in any civil case before the time when the repeal shall take effect.

three from the Army, four from the Air Force, and two from the Marine Corps, whose service stints spanned the 1940's, fifties, sixties and seventies. Each went to work as a new-hire for New England Telephone within a year of his honorable discharge from the service. All but one remained in the continuous employ of the telephone company at the time the complaint was filed. Their occupations include cable splicer, cable technician and lineman.

Defendants here include the NYNEX Corporation and its subsidiary, New England Telephone Company, and their successors in interest, American Telephone and Telegraph and American Telephone and Telegraph Information Systems, who assumed certain relevant functions from their operating companies upon divestiture.

The first count of plaintiffs' complaint alleges that New England Telephone Company deprived them of vested seniority rights without due process of law. They further charge that they were denied equal protection of the laws because the company granted rights and benefits to other veterans pursuant to other statutes and ordinances. Plaintiffs claim that both actions represent violations of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

A second count alleged the same constitutional claims against the State of Rhode Island for its failure to enforce R.I.Gen. Laws § 30–21–3. This count has heretofore been dismissed, based upon the United States Supreme Court's recent decision in *Will v. Michigan Department of State Police,* which held that neither a state nor its officers acting in their official capacities is a "person" within the meaning of § 1983, and, thus, cannot be a defendant in a suit

brought under that section. —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Count III seeks an injunction against retrospective application of the repeal, Article 64, Chapter 181 of the Public Laws of 1985, and a declaratory judgment that the repeal violates the United States and Rhode Island Constitutions and § 43–3–22 (the general savings clause) of the Rhode Island General Laws, and is therefore void.

### DISCUSSION

Plaintiffs allege in their complaint that R.I.Gen.Laws § 30–21–3 endowed them with certain vested seniority benefits [6] and that defendants' failure to grant those benefits is a violation of their constitutional rights. To remedy the alleged deprivation of these substantive rights, plaintiffs seek redress under 42 U.S.C. § 1983. To maintain an action under 42 U.S.C. § 1983, two elements must be established: 1) the deprivation of a right or privilege secured by the Constitution or laws of the United States, and 2) that the deprivation occurred under color of state law.[7] *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). Failure to establish either requirement is a basis for dismissal. *Id.* at 166, 98 S.Ct. at 1738–39. This action is dismissed because of plaintiffs' failure to satisfy both prongs of the cause of action, i.e.: they can make no showing that they have been deprived of a constitutional right and they can make no showing that defendants were acting under color of state law.

### *"The deprivation of a right"*

Upon analysis of the first of the two requisite elements of plaintiffs' substantive constitutional claims, it is clear that these

---

**6.** Plaintiffs claim that, as a result of such vested rights, they are each entitled to all monetary and other benefits accruing to employees in like positions solely on the basis of seniority, including, but not limited to, step increases in salary within grade, longevity pay entitlements, service credit toward retirement or pension eligibility, rate computation for such pensions or retirement plans, insurance, vacations, sick leave allowances, seniority in selection of assignment, eligibility for training and education, and promotion. Plaintiffs' Complaint, paragraph 75.

**7.** Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

claims are disposable based upon this Court's prior decision in *West v. Town of Bristol*, 712 F.Supp. 269 (D.R.I.1989), the Circuit Court's recent affirmation of that analysis in *Hoffman v. Warwick*, 909 F.2d 608 (1st Cir.1990), and *Brennan v. Kirby*, 529 A.2d 633 (R.I.1987). In *Hoffman*, the Circuit Court reviewed and dismissed federal constitutional claims based on the contract clause, Fifth Amendment takings clause, access to the court and substantive due process under the Fourteenth Amendment, as well as procedural due process and equal protection of the laws. The *Hoffman* Court's treatment of the latter claims (procedural due process and equal protection) is applicable here because those are the *identical* claims asserted in this case by the present plaintiffs.

In analyzing the due process claim stemming from the municipalities' failure to grant veterans' seniority benefits to their employees without a hearing *prior* to the repeal, the Court in *Hoffman* determined that the denial was consistent with the uniform policy of the cities and the Rhode Island Department of Labor. "When statutory benefits are denied or terminated pursuant to a class-wide policy determination, as opposed to an individual determination of eligibility," Circuit Judge Campbell wrote, "the Due Process Clause does not require the state to afford a hearing to each affected individual. The failure to implement the statute at all was a legislative-type decision for which no individual hearing was necessary." *Hoffman*, 909 F.2d at 620. (Citations omitted). As for the claim that the repeal itself violated plaintiffs' due process rights, the Circuit Court concluded that where the legislature eliminates statutory rights through legislation, absent any substantive constitutional infirmity, "the legislative determination provides all the process that is due." *Hoffman*, 909 F.2d at 621, quoting *Logan v. Zimmerman Brush Co.* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982).

Faced with the claim that the selective administration of veterans' seniority statutes, pre-repeal, (that is, the adherence to § 30–21–2, the "bridging" statute, and the disregard of § 30–21–3 for new-hires) constituted a violation of plaintiffs' equal protection rights, the *Hoffman* Court pointed out that a mere violation of state law, if rational, does not in itself infringe the Constitution. That the distinction between veterans returning to prior employment and those seeking new posts *was* rational was established by the Circuit Court in its analysis of the repeal itself.

The repeal of one seniority statute but not the other did not burden a suspect class nor impinge upon a fundamental right. Consequently, to withstand the equal protection challenge, the repeal need only be rationally related to a legitimate state purpose. *Hoffman*, 909 F.2d at 622. Citing several plausible goals of the selective repeal (cost savings, financial planning, and the stronger equitable interests of returning employees over new-hires), the Circuit Court determined the repeal was based on rational considerations and did not violate equal protection.

### *"Under color of state law"*

Although *Hoffman v. Warwick* provides authority to dispose of the substantive claims before this Court, these present claims fail to survive defendants' 12(b)(6) motion for an additional reason. Plaintiffs have alleged no state action, an essential element for any claim upon 42 U.S.C. § 1983. To maintain this action, plaintiffs must prove not only that defendants have deprived them of a right secured by federal law, but also that defendants did so while acting under color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978).

Defendants here are four inter-related business corporations, publicly owned and subject to state regulation. In their complaint, plaintiffs assert that defendants acted "under color and authority of state law" to deprive them of constitutional rights. Plaintiffs point out that defendants had a non-discretionary obligation to comply with the provisions of § 30–21–3, but offer no further evidence or theory to establish that defendant corporations were state actors within the meaning of § 1983.

While traditional Fourteenth Amendment analysis requires an act of the state or a state official, the Supreme Court, over the years, has developed several tests to determine whether discriminatory private conduct can be sufficiently official in character as to be attributable to the state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In *Jackson*, the Court found that a Pennsylvania electric company, which held virtual state-conferred monopoly status, was not a state actor for purposes of analyzing its service termination procedures. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so," the *Jackson* Court wrote. 419 U.S. at 350, 95 S.Ct. at 453. (citations omitted). It then went on to examine the challenged activity from three approaches: the nexus between the state regulations and the challenged activity; the extent to which the utility's business was one traditionally reserved to the state; and the existence of a symbiotic relationship between the state and the utility. In other cases, the Court has looked for joint action by the state and private parties (*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), or a conspiracy between state officials and the private party (*Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984). Plaintiffs have not argued that any of these lines of reasoning apply to their circumstances; and it seems apparent that none does.

In a memorandum of law in response to defendants' 12(b)(6) motion, plaintiffs develop a state action theory, which is similarly inapposite. "Plaintiffs submit that the State's failure to enforce Sections 30–21–3 and 30–22–3 via the mechanism provided in Section 30–21–7, encouraged the defendant employers to neglect to provide or to refuse to provide those perquisites of seniority without fear of prosecution." Page 10 of Plaintiffs' Memorandum in Re-

sponse to the Court's Inquiry, received February 16, 1990. Plaintiffs then cite *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), where the Court held a Mississippi department store liable for a § 1983 violation when its employees ejected a white woman who tried to dine at a lunch counter with several black patrons. The woman was immediately arrested for vagrancy by a policeman waiting outside the store's door. In addition to finding a conspiracy between the store and the police, the *Adickes* court also based its holding on the "custom and usage" language of § 1983. Recognizing that discriminatory practices were sometimes encouraged and even enforced by state officials despite the apparent fairness of the laws on the books, the Court wrote:

> This interpretation of custom recognizes that settled practices of state officials may, by imposing sanctions or withholding benefits, transform private predilections into compulsory rules of behavior no less than legislative pronouncements.

398 U.S. at 168, 90 S.Ct. at 1614.

What makes the *Adickes* circumstances different from those in the case before us is, first, there is no evidence of a conspiracy between the State of Rhode Island and defendants to deny plaintiffs their seniority benefits. Second, even though the State had routinely denied the statutory benefits to its veteran employees, and disregarded the fact that its municipalities followed suit, this conduct never took on the character of "a compulsory rule of behavior." The telephone company was at all times free to grant to its employees seniority benefits, and any other benefits as it saw fit.

In *Flagg Bros., Inc. v. Brooks*, the Supreme Court rejected plaintiff's § 1983 claim, stating that the conduct of a private warehouseman was not state action despite the fact that it was authorized by state statute. 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Plaintiff Brooks had been evicted from her apartment by a city marshall, who arranged the storage of her things with the defendant. When she failed to pay the moving and storage fees,

the defendant threatened to sell them, and she filed suit. The Court stated that mere compliance with the law did not convert the conduct of the warehouseman to state action.

Respondents further urge that Flagg Brothers' proposed action is properly attributable to the State because the State has authorized and encouraged it in enacting § 7–210. Our cases state "that a State is responsible for the ... act of a private party when the State, by its law, has compelled the act." *Adickes,* 398 U.S., at 170 [90 S.Ct. at 1615]. This Court, however, has never held that a State's mere acquiescence in a private action converts that action into that of the State.

436 U.S. at 164, 98 S.Ct. at 1737–38.

After cataloging pertinent caselaw, the Court concluded, "These cases clearly rejected the notion that our prior cases permitted the imposition of Fourteenth Amendment restraints on private action by the simple device of characterizing the State's inaction as 'authorization' or 'encouragement.'" 436 U.S. at 164–65, 98 S.Ct. at 1737–38.

█ In the present case, plaintiffs claim that the State's failure to enforce § 30–21–3 "encouraged" or "authorized" defendants' denial of veterans' benefits. Under *Flagg Brothers,* it is clear that a private party's adherence to the law, or a state-tolerated disregard for the law, does not support a joint action or conspiracy claim sufficient to establish the "under color of state law" element of 42 U.S.C. § 1983. Consequently, defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

The Clerk will enter judgment forthwith for all defendants.

*It is so Ordered.*