[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Plaintiff Lewis A. Perrotti (Perrotti) is presently before this Court on a verified complaint for a permanent injunction seeking to enjoin Defendants Anthony J. Solomon, in his capacity as General Treasurer and Chairman of the Rhode Island Retirement Board, and James M. Reilly, Acting Director of the State Employees' Retirement System (Defendants), from conducting a hearing to determine whether Perrotti's state pension benefits should be terminated. This Court, sitting without a jury, entertained the parties' oral arguments relative to whether Defendants possess legal authority to conduct such a hearing.
The facts from which this cause of action arises are virtually undisputed. Perrotti, a former employee of the State of Rhode Island with service credit equal to thirty-five (35) years, last served as Chief Deputy Registrar of Motor Vehicles with the Department of Transportation (DOT). Effective June 29, 1983, Perrotti was dismissed from his position as Chief Deputy Registrar for gross misconduct in performing his official duties. The DOT alleged that Perrotti submitted falsified vouchers and other official documents to the state. Perrotti was later indicted by both federal and state grand juries on criminal charges related to these allegations. The federal indictment resulted in a conviction of Perrotti on charges of mail fraud. The state eventually dismissed its 1983 indictment of Perrotti on March 23, 1987.
Perrotti's appeal of his dismissal from the DOT remained pending until 1989. On July 27, 1989, Perrotti and the DOT entered into an agreement under which the DOT agreed to rescind Perrotti's termination. In return, Perrotti agreed to withdraw his termination appeal and refrain from further legal or administrative action against the DOT. The terms of the agreement further provided that Perrotti would return to state service for one day and then apply for retirement. In accordance with the agreement, Perrotti's retirement became effective July 29, 1987. It is undisputed that Perrotti has fully honored his obligations under the agreement at all times since its execution.
On December 18, 1991, Defendant Reilly, as Acting Director of the Employees' Retirement System, notified Perrotti that his pension benefits would be suspended effective January 1, 1992. Defendants and other Retirement Board members voted on March 11, 1992 to conduct a hearing to determine whether Perrotti is properly entitled to receive state pension benefits given the allegations that led to federal and state indictments and his dismissal from the DOT. The Retirement Board convened on April 8, 1992 to schedule the Perrotti hearing. Challenging the basis of their legal authority, Perrotti now seeks to enjoin Defendants from conducting the hearing.
Perrotti submits that Defendants are entirely without legal authority to conduct a hearing to determine whether sufficient facts exist to justify terminating his pension benefits. Perrotti contends that the statutory provisions of R.I. Gen. Laws Chapter 8, Title 36, governing administration of the state pension system, simply do not provide Defendants with the authority to conduct such a hearing. Perrotti further contends that since the pension administration statute does not impose an honorable service requirement as a prerequisite for eligibility, Defendants are precluded from imposing such a standard in re-assessing the propriety of his pension. Last, Perrotti asserts that Defendants cannot terminate his state pension benefits since they are vested property rights supported by a binding contract between himself and the DOT.
Citing R.I. Gen. Laws § 36-8-3 (Retirement Board's pension administration responsibility), however, Defendants contend that they possess full power and authority to review whether Perrotti has satisfied all state pension eligibility requirements. Relying on a December 17, 1991 opinion from the Rhode Island Attorney General, Defendants submit that honorable service is an implicit eligibility requirement for state pension benefits.
Perrotti first challenges the Retirement Board's authority to conduct this hearing. The Rhode Island General Assembly established the Retirement Board with the power and authority to administer the state retirement system pursuant to P.I. Gen. Laws § 36-8-3:
 The general administration and the responsibility for the proper operation of the retirement system and for making effective the provisions of chapters 3 to 10, inclusive, of this title are hereby vested in a retirement board. The retirement board shall, from time to time, establish rules and regulations for the administration and transaction of the business of the retirement system. . . The retirement board shall also perform such other functions as are required for the execution of said chapters 8 to 10, inclusive.
Although § 36-8-3 does not specifically empower the Retirement Board to conduct hearings to investigate the propriety of one's state pension, it does not necessarily follow that the Retirement Board is otherwise devoid of such authority. Statutory provisions must be applied in a manner that would not defeat or undermine their underlying policies, nor attribute an intent different than that which the General Assembly intended. Brennanv. Kirby, 529 A.2d 633, 637 (R.I. 1987). Even a cursory reading of § 36-8-3 reveals that the General Assembly vested the Retirement Board with significant discretion and substantial authority to administer properly the state retirement system. Under § 36-8-3, the Retirement Board also has the power to establish rules and regulations and "perform such other functions as are required" for the administration of the retirement system. Concomitant with this general administrative authority is the Retirement Board's implicit power to guarantee the integrity of the retirement system by reviewing the propriety of pensions issued to former state employees. Given the broad grant of authority under § 36-8-3, therefore, the Retirement Board possesses the authority to conduct a hearing to review the propriety of Perrotti's pension.
Perrotti next argues that honorable service is not a prerequisite for pension eligibility. It is undisputed that the statutory provisions under which Perrotti was awarded his state pension do not explicitly provide that honorable service is a prerequisite for eligibility. Given the Rhode Island Supreme Court's June 15, 1992 decision in Commission on Judicial Tenureand Discipline Proceedings v. Almeida, ___ A.2d ___ (R.I. 1992) (No. 91-687-MP),[1] however, this Court need not engage in a detailed analysis of the numerous cases cited by the parties to resolve this issue.
In Almeida, our Supreme Court determined that honorable and faithful service is an implicit requirement for eligibility to receive pension benefits in all facets and positions of public service. Id. at 15. Public service, compensated at the public's expense, results in a public trust that necessarily implies faithful and honest service. Id. An honorable service requirement is intended in the interpretation and application of all state retirement statutes. Id. Since it is undisputed that Perrotti's pension benefits were acquired under the state retirement system, the Rhode Island Supreme Court's decision inAlmeida clearly requires that honorable service is a prerequisite for eligibility.
Notwithstanding the honorable service prerequisite, Perrotti contends that his property rights in his pension are permanently vested pursuant to the arms-length contractual agreement he executed with the DOT in July of 1989. Perrotti submits that this agreement is fully enforceable and binding on the state. To challenge his entitlement to pension benefits now, Perrotti argues, would unconstitutionally impair his contract rights against the state. This argument is entirely without merit.
Prior to addressing the essence of state employees' contractual rights under the state retirement system, it is necessary for this Court to consider the import of Perrotti's 1989 agreement with the DOT. A careful reading of that agreement indicates that it in no way imposed binding contractual obligations on Defendants or the Retirement Board. Rather, the agreement creates contractual obligations only between Perrotti and the DOT relative to Perrotti's application for retirement. Indeed, paragraph nine of the agreement specifically provides that "in the event that the State Retirement Board determines that Mr. Perrotti is not eligible for retirement . . ., [the] agreement is rescinded and the parties [must] meet to discuss other alternatives." Given this clear and unambiguous language that the Retirement Board retains authority to determine Perrotti's pension eligibility, his argument that the agreement now precludes the Retirement Board from re-assessing his eligibility obviously must fail. The 1989 agreement between Perrotti and the DOT has absolutely no bearing on Defendants' power to re-evaluate Perrotti's pension eligibility.
Perrotti also argues that he has acquired vested property rights in his pension benefits under the state retirement system. In Almeida, supra, our Supreme Court addressed the circumstances under which state pension rights become vested. Refusing to adopt a straight contract theory, the court concluded that state pensions comprise elements of both deferred compensation and contract theories. Almeida, at 21. The court held that while the right to deferred compensation vests upon satisfying the terms of employment, vesting is nevertheless subject to divestment because it is conditioned on continued honorable and faithful public service. Id. Pension rights are subject to divestment for improper actions committed during a state employee's tenure in office, whether such actions are discovered while in office or sometime thereafter. Id. at 22.
Pursuant to the 1989 agreement with the DOT, Perrotti returned to state service for one day and then applied for retirement. It is undisputed that Perrotti has fully complied with all his obligations under the agreement since its execution. In light of our Supreme Court's decision in Almeida, however, it is apparent that Perrotti's state pension benefits are nevertheless subject to divestment if it is hereafter determined that he breached the implied requirement of honorable and faithful service.
It is clear from the relevant statutory provisions that the Retirement Board, in administering and preserving the integrity of the retirement system, possesses the power and authority to conduct a hearing to determine the propriety of Perrotti's state pension benefits. As honorable and faithful service is a prerequisite for eligibility to receive pension benefits in all facets and positions of public service, the Retirement Board may properly consider whether Perrotti has satisfied this requirement. Since state pension rights are not indefeasible, they are clearly subject to divestment where the recipient does not satisfy the requirement of honorable and faithful service. Following a thorough review of all the evidence and applicable law, this Court is convinced that under no circumstances is Perrotti entitled to injunctive relief. Accordingly, Lewis A. Perrotti's petition for a permanent injunction enjoining Defendants from conducting a hearing to determine the propriety of his state pension benefits is hereby denied.
Counsel shall prepare an appropriate judgment for entry.
[1] As this opinion was only recently published by the Rhode Island Supreme Court, the official citation is not yet available. All citations to the opinion by this Court, therefore, shall refer to the edition published by the Rhode Island Supreme Court available at the Supreme Court Clerk's Office.