STATE

v.

**James PELZ.**

No. 98–287–C.A.

Supreme Court of Rhode Island.

Jan. 26, 2001.

Virginia M. McGinn, Aaron L. Weisman, Providence, Shilpa Naik, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case came before the Court for oral argument on November 15, 2000, pursuant to the appeal of the defendant from his conviction for failure to pay child support. We affirm the defendant's conviction. The facts insofar as pertinent to this appeal are as follows.

James Pelz (defendant) married Sally Pelz (wife) in 1975. Initially, the couple lived in Iowa. During the course of the marriage, they had three children. In 1980 the defendant and wife separated. In 1982 the wife returned to Rhode Island with the children to live with her parents. Shortly thereafter, defendant also moved to Rhode Island. He worked at various jobs. As of 1993, defendant was self-employed.

During the time defendant resided in Rhode Island, several orders were entered requiring him to pay child support. On June 16, 1986, defendant was ordered to pay $100 per week in child support. On September 1, 1990, the above order was

modified to include an additional $45 per week for arrearage (bringing the weekly total to $145). On October 25, 1993, the order for child support was again modified; this time to $50 per week for child support and $30 per week for arrearage. This order was later modified to require defendant to pay $80 per week for arrearage, with no additional child support payments. On April 4, 1997, defendant was arrested and later charged with failure to pay child support, pursuant to G.L.1956 § 11–2–1.1, upon information and belief that defendant had an outstanding arrearage of more than $30,000 and had failed to make scheduled child support payments.

A jury-waived trial was held in the Family Court on February 10 through February 12, 1998. At the beginning of the proceedings, the state introduced evidence that defendant had a principal arrearage in child support in the amount of $26,945.41 and a total arrearage of $43,930.41, including interest. Those figures represented the defendant's apparent outstanding obligations at the start of trial.[1] Under § 11–2–1.1, an arrearage in child support must total at least $30,000 for a criminal violation to have occurred. Thus, after the state introduced the evidence mentioned above concerning the amount of money owed by defendant, defendant moved to dismiss because of the state's inability to demonstrate probable cause for the charge against him. The trial judge denied defendant's motion. In doing so, he ruled that interest was included in determining the statutory amount for a criminal violation under § 11–2–1.1.

The defendant then moved to dismiss the case on the grounds that § 11–2–1.1 was unconstitutional because it gave no notice to him that what had previously been considered merely wrongful behavior was now criminalized. The judge denied this motion, finding that defendant had, in fact, received notice because § 11–2–1.1 merely constituted an enhanced penalty for abandonment or nonsupport, previously punished as a misdemeanor.[2]

At trial, Debra Cunningham (Cunningham), the accounting clerk responsible for overseeing child support payments in the Family Court, testified that as of April 4, 1997, defendant owed $29,215.41 in back child support. This figure represented the amount owed by defendant for the period when his wife was receiving Aid to Families with Dependent Children (AFDC). Cunningham was asked to check her records to determine how much in child support defendant owed for the times when the wife was not receiving AFDC. After checking her records, she determined that, as of June 1996, $1,135.49 was owed in non-AFDC child support payments.[3] Thus, Cunningham determined that the total figure, as of June 1996, excluding interest, owed by defendant to wife, was $30,350. She further testified that defendant did not make any child support payments between January 1997 and April 1997. However, payments made by the defendant *after* his arrest in April 1997 had brought his arrearage down to $29,215.41, by the time the trial had started.

1. However, testimony later adduced at trial would develop that the amount of defendant's arrearage, exclusive of interest, was higher than $30,000 at the time of his arrest.

2. Misdemeanor criminal sanctions for abandonment or nonsupport are provided for in G.L.1956 § 11–2–1:

"Abandonment or nonsupport of spouse or children.—Every person who shall abandon his or her spouse or children, leaving them in danger of becoming a public charge, or who shall neglect to provide according to his or her means for the support of his or her spouse or children, or who shall neglect or refuse to aid in the support of his or her spouse and/or children, except as otherwise provided for in § 11–2–1.1, shall be deemed guilty of a misdemeanor and shall be punished by imprisonment for not more than six (6) months."

3. Originally, Cunningham testified that defendant owed $3,250 in non-AFDC child support payments. But when questioned by defense counsel, she corrected that figure and stated that only $1,135.49 was owed.

Testimony was also adduced at trial concerning whether defendant had the means to pay his child support obligations. Joyce Fratantuono (Fratantuono), president of Central 2000 Employment Agency, Inc., testified that her company was a client of defendant from 1993 through March 1997. She testified that during that time period her company had paid him approximately $293,000. In a letter to the Attorney General's Office dated April 24, 1997, Fratantuono provided a summary of amounts paid to defendant between October 1994 and March 1997, showing that defendant had been paid approximately $224,000 during that period. She estimated that approximately 20 percent of the amount paid to defendant was for business expenses and 80 percent was for his services.

Gladys Garcia (Garcia), a friend of defendant, also testified. She said that on April 4, 1997, defendant gave her approximately $15,000 to hold for him. In turn, Garcia gave the money to her father, who went to New York. The defendant later accompanied Garcia and her mother to New York to obtain the money a couple of weeks after he was released from jail. Ostensibly, defendant needed the money to reimburse his brother for posting his bail.

At the conclusion of the state's case, defendant moved for a judgment of acquittal. Defense counsel later changed that motion to a motion to dismiss. The trial judge denied the motion. The defendant renewed his motion to dismiss at the close of all the evidence. This motion was also denied. The trial judge found defendant guilty of failure to pay child support under § 11–2–1.1. He found that the arrearage amount exceeded the statutory amount, without the inclusion of interest. The trial judge further found that defendant had the ability to pay child support, but willfully and intentionally had chosen not to do so. The defendant was sentenced to five years imprisonment, with three years to serve and two years suspended with probation. The defendant filed a timely appeal.

In support of his appeal, defendant argues that the state lacked probable cause to charge him under § 11–2–1.1, that the trial judge erred in denying defendant's motion to dismiss at the close of the state's case, that the trial judge erred in limiting cross-examination, and that § 11–2–1.1, as applied to him, was unconstitutional. We shall address each of these arguments in sequence.

I

■ The defendant first argues that the state lacked probable cause to charge him under § 11–2–1.1. He notes that the state's own evidence showed that he owed $26,945.41 in child support arrearage. Thus, the defendant argues that his arrearage did not meet the statutory mandate of $30,000 set forth in § 11–2–1.1. Additionally, because § 11–2–1.1 is silent on whether interest should be included in the total calculation, defendant argues that the statute must be strictly construed to exclude interest in calculating total arrearage.

Section 11–2–1.1 provides in pertinent part:

"Failure to pay child support.—(a) Every person who is obligated to pay child support pursuant to an order or decree established by or registered with the family court pursuant to chapter 11 of title 15, who has incurred arrearage of past-due child support in the amount of thirty thousand dollars ($30,000), and who shall willfully thereafter, having the means to do so, fail to pay one or more installments of child support in an amount previously set by the court, according to the terms previously set by the court shall be guilty of a felony for each instance of failure to make such subsequent payments and upon conviction be punished by imprisonment for a period not to exceed five (5) years."

Subsection (c) of § 11–2–1.1 states that "the term, 'subsequent payments', shall mean those payments or installments due and owing after a person has incurred an

arrearage of thirty thousand dollars ($30,-000) as specified in subsection (a)."

■ The standard for determining whether probable cause exists to believe that a defendant has committed an offense is as follows:

"In assessing a motion to dismiss an information, the trial justice must 'examine the information and the attached exhibits to determine "whether there exists probable cause to believe that the offense charged ha[d] been committed and that [the] defendant had committed it." ' * * * The probable-cause standard applied to a motion to dismiss is the same as that for an arrest. * * * Probable cause to arrest 'consist[s] of those facts and circumstances within the police officer's knowledge at the moment of arrest and of which he had reasonably trustworthy information that would warrant a reasonably prudent person's believing that a crime had been committed and that the prospective arrestee had committed it.' * * * In deciding a motion to dismiss, the trial justice's findings are 'entitled to great weight and will not be set aside unless they are clearly erroneous or fail to do justice between the parties.' " *State v. Aponte,* 649 A.2d 219, 222 (R.I.1994).

Testimony at trial established that at the time of his arrest, defendant owed $30,350, exclusive of interest. Additionally, after his arrearage had reached the statutory minimum of $30,000, defendant failed to make any payments between January and April 1997, despite the fact that he had the financial means to do so. These facts alone provide the requisite probable cause to establish that defendant violated § 11–2–1.1.

Having concluded that there was sufficient evidence to establish that probable cause existed to charge defendant under § 11–2–1.1, without including interest in meeting the statutory threshold, we do not address the question of whether interest should or should not be included in the total statutory calculation.

## II

■ The defendant next argues that the trial judge erred in denying defendant's motion to dismiss at the close of the state's case. He argues that he did not violate § 11–2–1.1 because he did not have any current obligation to pay child support at the time of his arrest. The defendant points out that his youngest child was emancipated in June 1996. After this date, defendant notes, he was obligated only to pay *arrearage* on past-due child support. The statute specifically requires that a defendant would have to "fail to pay one or more installments of child support" in order to violate § 11–2–1.1. The defendant interprets this language to include only the failure to pay any *current* child support installments, not any money owed in back child support.

■ Section 11–2–1.1 specifically deals with the situation of a defendant who has a substantial arrearage in child support payments. It would be inconsistent with the intent of the statute for a person to escape its reach by simply waiting until his or her children attain majority. "[P]enal statutes * * * should not be interpreted in a manner that would thwart a clear legislative intent." *State v. Gonsalves,* 476 A.2d 108, 111 (R.I.1984).

■ Furthermore, while § 11–2–1.1(b) does indeed refer to "installments of child support," it goes on to state that an individual is "guilty of a felony for each instance of failure to make such *subsequent payments.*" (Emphasis added.) "Subsequent payments" is defined in § 11–2–1.1(c) as "those payments or installments due and owing after a person has incurred an arrearage of thirty thousand dollars ($30,000) * * * or those payments or installments due and owing after a person has failed to pay an installment for a period of three (3) years." In construing statutes, this Court "adhere[s] to the basic proposition of establishing and effectuating the intent of the Legislature[, * * * which]

is accomplished from an examination of the language, nature, and object of the statute." *Howard Union of Teachers v. State*, 478 A.2d 563, 565 (R.I.1984) (citing *Gott v. Norberg*, 417 A.2d 1352, 1356 (R.I.1980), and *Berthiaume v. School Committee of Woonsocket*, 121 R.I. 243, 247, 397 A.2d 889, 892 (R.I.1979)). A plain reading of this language, especially in light of the nature and object of the statute, encompasses both current child support installments *and* court-ordered payments for past arrearage.

## III

■ Additionally, defendant argues that the trial judge erred in limiting cross-examination of Fratantuono. He argues that he should have been allowed to ask questions that would have further revealed Fratantuono's bias against him. For example, Fratantuono testified at trial that the defendant had printed up shares of her company's stock in his name and his brother's name, without her authorization. The defendant argues that further questioning on this matter should have been allowed because it had bearing on Fratantuono's credibility.

■ "[A] trial justice is given wide discretion to permit or limit counsel's cross-examination of witnesses during trial, and that discretion, absent a showing of clear abuse, will not be disturbed on appeal, and then, only if such abuse constitutes prejudicial error." *State v. Oliveira*, 730 A.2d 20, 24 (R.I.1999) (citing *State v. Anthony*, 422 A.2d 921, 924 (R.I.1980); *State v. Carraturo*, 112 R.I. 179, 189, 308 A.2d 828, 833 (1973)). Cross-examination for the purposes of developing a witness's bias is not unlimited. *See State v. Doctor*, 690 A.2d 321, 326–29 (R.I.1997).

The defendant was given ample opportunity to cross-examine Fratantuono for any possible bias. The trial judge himself noted, both at the time he limited cross-examination and later in his decision, that Fratantuono had some hostility towards defendant. The stock issue, however, went far afield of the central issue of whether defendant had the means to pay child support, and was cumulative, in any event, to other instances where Fratantuono's bias against defendant was brought out. Thus, the trial judge did not abuse his discretion in limiting cross-examination on this matter.

## IV

■ Finally, defendant argues that § 11–2–1.1 is unconstitutional as an ex post facto law. The defendant notes that when the statute was enacted in 1995, he already had an arrearage of $21,993.76, exclusive of interest. However, defendant argues his arrearage did not reach and exceed the $30,000 statutory limit until after the statute had been passed. Thus, defendant argues that he had no notice that his previous status as a debtor had been transformed into that of a criminal felon.

■ The ex post facto prohibition is violated by the following types of laws: "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *State ex. rel. Webb v. Cianci*, 591 A.2d 1193, 1214–15 (R.I. 1991) (quoting *Lerner v. Gill*, 463 A.2d 1352, 1356 (R.I.1983) (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, 650 (1798)).

Assuredly, a substantial portion of defendant's arrearage occurred prior to the enactment of § 11–2–1.1 in 1995. However,

the defendant did not incur criminal liability until *after* his arrearage totaled $30,000 *and* he willfully failed to make a scheduled installment payment. Both of these factors did not occur until *after* the enactment of § 11–2–1.1. Thus, the application of § 11–2–1.1, as applied to the defendant, does not render it an invalid ex post facto law.

## CONCLUSION

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in the case are remanded to the Family Court.