DECISION
This matter comes before the Court on the Department of Mental Health, Retardation, and Hospitals' (MHRH) Petition to Transfer the Defendant, Anthony Tavares (the defendant), to the custody of the Director of the Department of Corrections (DOC). The defendant was declared incompetent to stand trial and placed in MHRH's custody. Subsequently, however, the defendant has been found competent to stand trial and MHRH now seeks to transfer him to the DOC. Both the defendant and the State (the Parties) object to the petition on the grounds that the defendant's present competency is the product of the care that he has received at Eleanor Slater Hospital (ESH) and that a transfer to the DOC will likely cause him to decompensate during trial. The issue before the Court is whether the defendant, since he is presently competent to stand trial, must be transferred from ESH to the Adult Correctional Institute (ACI). In reviewing the defendant's history and the statute applicable to defendant's transfer, the Court exercises its discretion to deny MHRH's Petition to Transfer.
 Facts and Travel 
The defendant has been charged with the murder of his mental health worker, Glenn Hayes, which occurred on November 9, 2001. Petitioners'Competency to Stand Trial Evaluation of 11/14/01 at 1.[1] By order of the District Court dated December 3, 2001, the defendant was declared incompetent to stand trial and committed to the custody of MHRH. The defendant was then transferred from the ACI to ESH, where he has been given treatment to restore his competency to stand trial. Before contemplating the present arguments, it is appropriate to briefly chart out the defendant's history and current condition.
The Defendant's Personal History
The defendant was born on August 27, 1979, in Rhode Island. Regarding his family background, the defendant has a sixteen year-old brother and had a sister; however, she was killed in an automobile accident. Although the defendant's mother exhibits no psychiatric problems, his father has been diagnosed a schizophrenic and has been incarcerated at the ACI.Evaluation 1 at 2. In fact, the defendant stated in November that "I don't know my dad. I met him a couple of months ago." Id.
The defendant had his first encounter with juvenile courts when he was eleven for, inter alia, fighting in school. Evaluation 2 at 2. For these transgressions, the defendant was sent to Camp-E-Huntee for one year. When the defendant was thirteen, he had an altercation with the police and was brought to Bradley Hospital. From the ages of fourteen through eighteen, the defendant was sent to the Rhode Island Training School four times for various infractions, the most serious of which was car theft. By the defendant's own estimation, he has been arrested twelve times as an adult for such crimes as larceny, assault, and assault with a dangerous weapon.
The Defendant's Psychiatric State
The defendant has been admitted for inpatient hospitalization at least seven times. Id. at 8. The defendant was diagnosed with schizophrenia at age nineteen. Evaluation 1 at 2. "His symptoms of schizophrenia include auditory hallucinations and delusions (fixed, false beliefs) of a paranoid and religious nature. When asked to describe the auditory hallucinations, he stated, `They tell me different things, they run me.'"Id.
Evaluation 1 was completed shortly after the defendant arrived at EHS from the ACI. During Evaluation 1, the defendant stated that he believed the mental health workers who went to his house "worked for Satan." Id.
He also professed to having a personal relationship with Carl Jung. While the defendant was at the ACI, he had refused all his medications. Social workers at the ACI described the defendant as "clearly acutely psychotic," "guarded, confused, and uncooperative," and "agitated and assaultive." He was found "lying on his bed rocking back and forth." The defendant reported that the devil commanded him to harm himself and others. He believed that body snatchers were walking around. He was convinced that he had been replaced by an exact opposite or duplicate. He made claims that the government had kidnapped and murdered his child on Halloween. The defendant's attention, concentration, and general recall were all deemed poor during Evaluation 1. Also, the defendant's answers were often incomprehensible.
MHRH devised a specific treatment plan for the defendant, which included medication, observation, and participation in group activities. The defendant has actively participated in a competency restoration group and in other activities. Evaluation 2 at 4. The defendant has also been taking his medication, which includes Zyprexa, Depakote, and Cogentin, daily.
Evaluation 2 reports that the defendant is doing better. The defendant stated, "I still have problems, but they ain't as bad `cause I'm here." The defendant still feels that people want to harm him, but he has been able to ignore these feelings because, as he understands it, people are the innocent pawns of the devil and he does not want to harm innocent people. According to the evaluation, the defendant still suffers from "tactile hallucinations, such as feeling the sensation that people are putting things in his mouth and are touching him, sometimes sexually."
The conclusion of Evaluation 2 was that "[the defendant's] active symptoms of psychosis [have] markedly improved with treatment." Moreover, Evaluation 2 resolved that the defendant's "disorganized thinking, disorganized behavior, and overt psychotic hallucinations have largely remitted." The defendant appeared less aggressive, more cooperative, and less fanatical about his religious convictions. Thus, the defendant is now competent to stand trial.
 The Statutory Arguments
Since the defendant is presently competent to stand trial, MHRH seeks to transfer him to the ACI. As the basis for the transfer, MHRH relies on R.I.G.L. 1956 § 40.1-5.3-3(i)(3(i), which states that the commitment of a person to the custody of MHRH pursuant to that section shall terminate when the person is determined to be competent to stand trial by the court. MHRH argues that the language is unambiguous and the legislature's use of the word "shall" leaves the court with no discretion to extend the defendant's commitment to the custody of MHRH.
MHRH pleads that it is a department with very limited resources. In fact, MHRH has only twenty beds at ESH for those in need of treatment. The reason for the defendant's commitment to MHRH was to restore his competency to stand trial through treatment. MHRH argues that this purpose has been attained and that the defendant's continued placement with MHRH will not reap further benefits because he is no longer in need of special medical treatment. By contrast, MHRH asseverates that keeping the defendant at ESH may prevent someone who presently requires treatment at ESH more than he from getting the necessary assistance. MHRH also contends that the defendant will receive all of his psychiatric medication at the ACI.
The Parties reject MHRH's interpretation of the relevant statutory law. The Parties read R.I.G.L. 1956 § 40.1-5.3-3 in a broader sense than MHRH. The Parties argue that, taken as a whole, the Mental Health Law grants the court discretion to deny MHRH's petition to transfer the defendant even though he is competent to stand trial. The basis for their argument is that, even though the defendant is competent to stand trial, he is still mentally ill and in need of continued treatment that cannot be provided for him at the ACI. The Parties also argue that MHRH has a duty to assist the State; here, that duty is to continue treating the defendant so that State can prosecute the case without interruption.
The Parties refer to unpublished Superior Court case law as instructive regarding the present issue. See In re Muhammed, M.P. 99-1602, 2002 R.I. Super. LEXIS 44 (R.I. Super. March 15, 2002); In re Nem, M.P. 99-4546, 2002 R.I. Super. LEXIS 40 (R.I. Super. March 12, 2002); In re Gonsalves,
PM 94-4610, R.I. Super. LEXIS 162 (R.I. Super. March 6, 1999). These cases are not precisely on point; they deal with those inmates who have been convicted and transferred to MHRH pursuant to R.I.G.L. §40.1-5.3-7 rather than § 40.1-5.3-3(h)(2). These cases do, however, highlight instances wherein this Court has denied MHRH's petition to transfer mentally ill individuals back to the ACI because the ACI has neither the proper facilities nor treatment options available to care for their special needs.[2] The Parties argue that this is the case presently before the Court.
 The Competency of the Defendant
All parties agree that the defendant is presently competent to stand trial. The issue is whether he must now be transferred from ESH to the ACI. MHRH argues that the defendant should be transferred back to the ACI and that the statute clearly states that his commitment at ESH "shall terminate" upon a finding of competency. The Parties argue that the defendant should remain at ESH and that the Court possesses the authority to exercise its discretion to deny the petition.
The defendant was committed to the custody of MHRH pursuant to R.I.G.L. § 40.1-5.3-3(h)(2), and a hearing was held pursuant to R.I.G.L. § 40.1-5.3-3(i). The defendant was ordered held on an inpatient status pursuant to R.I.G.L. § 40.1-5.3-3(i)(3). Pursuant to that section, the commitment of the defendant "shall terminate" when the "defendant is determined by the court to be competent."
Under MHRH's strict reading of the statute, any defendant committed to MHRH's custody pursuant to this section and who is subsequently determined competent to stand trial by the court must be transferred to the ACI upon petition of MHRH, regardless of any special treatment needs of the defendant. Thus, once competency has been established, the role of the court would be reduced to merely rubber-stamping any petition to transfer a defendant from MHRH to the DOC. Such a reading denies to the court the discretion to act in the best interests of both the defendant, which may be continued care at ESH, and of the criminal justice system, which requires the efficient administration of justice. Moreover, such a reading is in conflict with other sections of the chapter and the rationale of the chapter as a whole.
Competency means that a defendant possesses the "mental ability to stand trial" and "is able to understand the character and consequences of the proceedings against him or her and is able properly to assist in his or her defense." R.I.G.L. § 40.1-5.3-3(a)(2). This definition contemplates, by necessity, a state of competency that is more than momentary. The statute's plain language requires a level of competency that should be reasonably expected to last the duration of a trial. Seegenerally, In re State of Gervais, 770 A.2d 877, 880 (R.I. 2002) (quotingState v. Pelz, 765 A.2d 824, 829-30 (R.I. 2001) (stating the maxim that in construing statutes, the court "adheres to the basic proposition of establishing and effectuating the intent of the Legislature[, ***which] is accomplished from an examination of the language, nature, and object of the statute.")). In addition, hearings on petitions to determine competency contemplate evidence as to "competency and prognosis." R.I.G.L. § 40.1-5.3-3(m) (emphasis added). Clearly, this Court must determine whether a defendant's competency can be expected to continue into the foreseeable future.
It is best for the defendant, the State, and the Court if the determination of the defendant's competency can be made prior to trial. "[R]esolution of the issue of competence to stand trial at an early date best serves both the interests of fairness and of sound judicial administration." Drope v. Missouri, 420 U.S. 162, 178 (1975) (citingPeyton v. Rowe, 391 U.S. 54, 62 (1968)). It follows that the concomitant duty of the court is to ensure the maintenance of the defendant's competence throughout the entire trial. Due process mandates that a defendant retain his competency throughout the trial. See id. at 181 ("Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.").
The facts presented persuade this Court that the removal of the defendant from ESH would cause him to decompensate. The defendant has been hospitalized for mental illness at least seven times. The defendant is a schizophrenic who suffers from hallucinations, paranoia, and delusions. Before his transfer to ESH, the defendant was described by social workers at the ACI as acutely psychotic, confused, uncooperative, and aggressive. The defendant refused all medication while at the ACI. Evaluation 1, which was completed upon the defendant's arrival at ESH, describes a man whose sad departure from the reality of this world was evidenced by his incomprehensible answers and outrageous proclamations.See supra. The defendant's attention, concentration, and general recall were all considered poor.
The defendant has since stabilized through the treatment he has received at ESH and is now competent to stand trial. Here, however, a crucial distinction arises. Though the defendant is competent to stand trial, he is still mentally ill and in need of continued psychiatric treatment. The defendant's schizophrenia is a major, biologically based mental illness that, though not curable, is treatable. The defendant still believes the devil is working through him and others. It is only through the environment and treatment provided by ESH that he has been able to control these feelings.
During the course of the interview for Evaluation 2, the defendant stated that he would rather be at ESH than the ACI, but felt that he was "wastin' time" at ESH because he would inevitably be returned to the ACI. He stated that ESH was "easier" on him than the ACI, where `"every time something happens, they say I'm nuts' and [then they] place him in a psychiatric cell." Evaluation 2 at 6. A psychiatric cell at the ACI includes little more than a solitary cell with windows that allow a correctional officer to look in upon the prisoner. See Nem, 2002 R.I. Super. LEXIS 40, 51-62 (outlining in precise detail the experiences of those individuals who must rely on the ACI's woefully inadequate provisions for the mentally disabled); see also Bureau of JusticeStatistics Special Report, Mental Health Treatment in State Prisons,2000 (July 2000) (positing that Rhode Island is in bad company as one of the three worst states in terms of facilities and care for their mentally disabled).
Looking to the facts, the Court finds that the defendant's present and, more importantly, his continued competency is conditioned upon his remaining in the custody of MHRH. But for his continued placement at ESH, it is reasonably likely that he would decompensate before or during his pending trial. Both Parties agree that continued care at ESH is the only reasonable, prudent option for an individual with the defendant's history. Moreover, if the defendant were to decompensate to the point of incompetency during trial, the Court's ability to discharge its responsibility to conduct a fair and efficient trial would be severely hindered. See Drope, 420 U.S. at 178.
 Conclusion
The defendant was transferred from the ACI to ESH to restore his competency. He has regained his competency, albeit a fragile one. The defendant's competency was restored, and is currently maintained, through both the environment and the care of the mental health professionals at ESH. The Court finds that the logical and reasonable construction of the statutory language at issue does not require a defendant's mandatory transfer to the ACI upon a finding of competency. But rather, where the evidence also establishes that there is no reasonable likelihood that the defendant will remain competent for the duration of his trial, this Court may exercise its discretion not to invoke the statute's transfer provision and permit the defendant to remain in the care and custody of MHRH. The defendant's best, and perhaps only, hope of retaining competency throughout this trial rests on his continued treatment at ESH. Therefore, this Court exercises its discretion and denies MHRH's Petition to Transfer.
Counsel are directed to confer and submit to this Court an order in conformity with this decision.
[1] Most of the facts regarding the defendant have been abstracted from MHRH's competency to stand trial evaluations. The first evaluation is dated November 14, 2001 (Evaluation 1) and the finding of that evaluation was that the defendant was incompetent to stand trial. The second evaluation is dated May 8, 2002 (Evaluation 2) and the finding of that evaluation was that the defendant is competent to stand trial.
[2] For a detailed account of the differences between the facilities and treatment options available at MHRH and the ACI, see Nem, M.P. 99-4546, 2002 R.I. Super. LEXIS 40, 51-62 (R.I. Super. March 12, 2002).