DECISION
The Petitioners, LPS Property Tax Solutions, Inc. ("LPS"), and Citi Residential Lending, Inc. ("Citi") (collectively, the Petitioners), filed an action in Superior Court seeking to vacate a decree foreclosing the right of redemption for property located at 207 Orms Street, Providence, Rhode Island (the "Property"), and otherwise known as Assessor's Plat 68, Lot 608. The action was filed pursuant to Chapter 9 of title 44 of the Rhode Island General Laws.
Currently before the Court is a motion filed by Petitioners, entitled "Motion to Vacate Judgment," as well as a motion filed by Respondent Hayon Realty Company ("Hayon") entitled "Motion to Dismiss and to Quash." Hayon seeks the entry of final judgment in its favor pursuant to Super. R. Civ. P. 54(b) on claims for which the requested remedy was to vacate a prior judgment of this Court foreclosing the right of redemption. Hayon further seeks an order of the Court to recall and vacate the lis pendens
that Petitioners have recorded in the Land Evidence Records.
Although not characterized as Motions for Summary Judgment, considering the nature of the motions and that the parties attached appendices to their papers, the Court will treat the filings as Cross-Motions for Summary Judgment. See
Super. R. Civ. P. 56 ("If on a motion for *Page 2 
judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .").[1] The Respondent City of Providence ("Providence") has filed an objection to Petitioners' motion. Jurisdiction is pursuant to G.L. 1956 § 44-9-24 and Super. R. Civ. P. 56.
 I Facts and Procedural History
On July 20, 2006, Hayon purchased the disputed Property at a tax sale conducted by the Providence Tax Collector. The tax deed, dated September 8, 2006, was duly recorded on September 19, 2006.
On July 25, 2007, Hayon filed a Petition to Foreclose the Right of Redemption against the former property owner, Francisco Semedo (Semedo). A title search performed by the Court-appointed title examiner revealed additional recorded interests and Hayon twice amended the petition to add said parties. Ultimately, the petition named as respondents: Semedo; Maria Lopes Furtado; Ameriquest Mortgage Company ("Ameriquest"); Associates Home Equity Services, Inc. N/K/A/ Citifinancial Mortgage Company, Inc. ("Associates"); the City of Providence, Department of Inspections and Standards; and Deutsche Bank National Trust Company, as Trustee ("Deutsche Bank"). The title search did not reveal either Petitioner as having a recorded interest in the Property.
Before reciting the events that allegedly occurred prior to the foreclosure of the right of redemption, the Court first will provide some background information. On June 2, 2004, LPS's alleged predecessor in interest, LSI Tax Services entered into a Tax Services Agreement with *Page 3 
Ameriquest and its affiliates. See "Tax Services Agreement Outsourcing," dated June 2, 2004.
Section 1.1(c) of the Agreement provided in pertinent part:
 "COMPANY [LSI] will perform tax advances on delinquent loans that are determined by CUSTOMER [Ameriquest] Payment guidelines to be of such a severe nature that the delinquency must be cured immediately in order to redeem the property prior to the tax agency's final tax sale or auction date. If final tax sale or auction date is within 5 days of tax/penalty advance and CUSTOMER cannot forward funds to Company for payment Company will advance funds from Company's general account to perform said tax/penalty advance" (Tax Services Agreement Outsourcing at 1-2.)
Section 12.1 of the Agreement provided in pertinent part:
 ". . . COMPANY'S liability on any claim of any kind for any loss or damages arising out of, or resulting from, this Tax Service Order or from COMPANY'S failure to perform adequately and timely the described services shall in no case exceed the exact amount of the CUSTOMER'S outstanding loan balance and any applicable tax advances, penalties and interest." (Tax Services Agreement Outsourcing at 8.) (Emphases added.)
Section 18 provided: "All obligations and duties of any party under this AGREEMENT shall be binding on all successors in interest and permitted assigns of such party." (Tax Services Agreement Outsourcing at 12.) If, as alleged, LPS is LSI's successor in interest, then the obligations and duties stemming from the Service Agreement are binding on LPS.
On October 21, 2004, LSI entered into a similar Tax Services Agreement with Deutsche Bank. See Tax Services Agreement Outsourcing dated October 21, 2004. Neither Service Agreement was recorded in the Land Evidence Records.
On March 9, 2006, Deutsche Bank, Ameriquest, and AMC Mortgage Securities, Inc. (AMC), signed a document entitled "Limited Power of Attorney." In it, Deutsche Bank appointed Ameriquest and AMC as its "Attorney in Fact" as Servicer or Master Servicer, pursuant to pooling and service agreements, or indentures, by and among Deutsche Bank, as *Page 4 
Trustee, and Ameriquest and AMC, as well as their respective successors and assigns. The document specifically stated "Nothing contained herein shall . . . be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Deutsche Bank National Trust Company except as specifically provided for herein." The document was recorded in the Providence Land Evidence Records on December 1, 2006.
On October 19, 2007, Ameriquest signed a similar "Limited Power of Attorney" document in which it appointed Citi as its "Attorney in Fact." (Limited Power of Attorney, Para. 11, dated October 19, 2007.) It was recorded on March 25, 2008, three days before the Court entered its decree foreclosing of the right of redemption. At some point in time, Citi purchased Ameriquest and became successor in interest to Ameriquest. (Citi's Answers to Interrogatories, Nos. 12 and 13.) Furthermore, "LPS was the real estate tax service provider for Citi Residential."Id. at No. 13.
On March 24, 2009, pursuant to this Court's order appointing him as Title Examiner, Joel Landry, principal of Lincoln Title Closing, LLC, performed a title search of the Property.See Affidavit of Joel Landry. His search revealed:
 1. The Limited Power of Attorney between Deutsche Bank and Ameriquest and AMC.
 2. An assignment of the mortgage from Ameriquest to Deutsche Bank, filed September 17, 2007.
 3. The Limited Power of Attorney between Ameriquest and Citi.
 4. Notice of Disposal of Tax Lien, filed March 16, 2008.
 5. An assignment of the mortgage from Ameriquest to Deutsche Bank, filed September 16, 2008.
See id.
On March 28, 2008, Hayon obtained a final decree from the Superior Court foreclosing all rights of redemption in the Property after having given notice of its Petition to Foreclose to those parties having recorded interests pursuant to the Landry title search. Hayon recorded *Page 5 
notice of the decree in the Land Evidence Records. On December 16, 2008, Petitioners filed the instant action in which they allege four counts against Defendants. Count I alleges negligence on the part of Chuhna; Count II alleges equitable estoppel; Count III alleges equitable estoppel pursuant to § 44-9-24; and Count IV alleges improper notice and lack of due process. The relief requested as to all counts was to vacate the decree foreclosing the right of redemption.
Specifically, Petitioners assert that they have an interest in the Property because they were responsible to ensure payment of the Property's taxes, and that the alleged nonpayment of those taxes could render them liable to Citi and Deutsche Bank for the loss of their interest in the Property. They maintain by affidavit that on December 20, 2007, LPS sent a cashier's check to Attorney Fernando S. Cuhna (Attorney Cuhna) on behalf of Citi and Deutsche Bank for purposes of redeeming the Property from foreclosure.[2]
The Petitioners further maintain that Attorney Cuhna's office confirmed receipt of the tendered payment but that, nevertheless, Attorney Cuhna negligently failed to accept the full redemption payment and to cease the foreclosure proceedings. By reason of the foregoing, Petitioners take the position that the Court should not have entered a final decree foreclosing the right of redemption.
The Petitioners also contend that Hayon should be equitably estopped from transferring the Property to a bona fide
third-party purchaser because their only remaining remedy would be a civil action against Attorney Cuhna and Hayon. They then assert that because "LPS tendered the required payment to Hayon's representative, Cuhna, before the foreclosure of the right of redemption, therefore redeeming the tax title to the Property[,]" they have met the standard for *Page 6 
vacating the decree foreclosing the right of redemption in accordance with § 44-9-24. Finally, Petitioners contend that the tax sale was void in the first instance because the City of Providence failed to properly notify Associates, a lien holder of record, of the initial tax sale in violation of § 44-9-11(a).
Hayon maintains that Petitioners do not have standing to bring an independent action under § 44-9-24 because neither of them had a recorded interest in the property. Accordingly, it maintains that the action should be dismissed forthwith as a matter of law.
Additional facts will be supplied as needed in the analysis section of this Decision.
 II Standard of Review
It is well-settled that "[s]ummary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v.Burrillville Racing Association, 603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State, 427 A.2d 338 (R.I. 1981);Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); see also
Super. R. Civ. P. 56. During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano,603 A.2d at 320 (citing Lennon v. MacGregor,423 A.2d 820 (R.I. 1980)). The Court's purpose during the summary judgment procedure is issue finding, not issue determination.Industrial National Bank v. Peloso,397 A.2d 1312, 1313 (R.I. 1979) (citing O'Connor v. McKanna,359 A.2d 350 (R.I. 1976); Slefkin v. Tarkomian,238 A.2d 742 (R.I. 1968)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any *Page 7 
material fact. Industrial National Bank,397 A.2d at 1313 (citing Rhode Island Hospital Trust NationalBank v. Boiteau, 376 A.2d 323 (R.I. 1977)).
However, "a party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions."Weaver v. Am. Power Conversion Corp.,863 A.2d 193, 197 (R.I. 2005) (quoting Accent Store Design,Inc., 674 A.2d 1223, 1225 (R.I. 1996)). Thus, "they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v. Bristol Boat Co.,705 A.2d 969 (R.I. 1998) (citing St. Paul Fire Marine InsuranceCo. v. Russo Brothers, Inc., 641 A.2d 1297, 1299 (R.I. 1994)). Furthermore, "[t]he purpose of the summary-judgment procedure is to identify disputed issues of fact necessitating trial, not to resolve such issues." Weaver, 863 A.2d at 197 (quoting Rotelli v.Catanzaro, 686 A.2d 91, 93 (R.I. 1996)).
 III Analysis A Standing
In its "Motion to Dismiss," Hayon asserts that Petitioners have no standing to seek to vacate the final decree because they did not have a recorded interest in the Property at the time of the tax foreclosure proceedings. It contends that Petitioners' failure to record an interest means that they do not constitute real parties in interest for purposes of § 44-9-24. The Petitioners respond that they do have standing to bring this action by virtue of the fact that as Service Providers, they were contractually liable to the mortgagee for the taxes on the Property. Thus, the threshold issue that the Court first must address is whether Petitioners have standing to bring this action to vacate the final decree foreclosing the right of redemption. *Page 8 
It is well-established that the interpretation of a statute is a question of law. See Palazzolo v. State ex rel. Tavares,746 A.2d 707, 711 (R.I. 2000). Where the language of a statute "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. of Employees' RetirementSystem of State v. DiPrete, 845 A.2d 270, 297 (R.I. 2004) (internal quotations omitted). Accordingly, when "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written."Id.; see also State v. Santos,870 A.2d 1029, 1032 (R.I. 2005) ("The plain statutory language is the best indicator of legislative intent.").
Furthermore, under our cannons of statutory interpretation
 "[t]he construction of legislative enactments is a matter reserved for the courts, . . . and, as final arbiter on questions of construction, it is this court's responsibility in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." State v. Greenberg, 951 A.2d 481, 489 (R.I. 2008) (quoting Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987)).
To accomplish this task, the Court must scrutinize "`the language, nature, and object of the statute[,]' to glean the intent of the Legislature." Id. (quoting State v. Pelz,765 A.2d 824, 829-30 (R.I. 2001)). However, "[t]his Court will not construe a statute to reach an absurd result." State v.Flores, 714 A.2d 581, 583 (R.I. 1998) (quoting Kaya v.Partington, 681 A.2d 256, 261 (R.I. 1996)).
An action to foreclose the right of redemption "is a unique procedure created by statute for a limited purpose; to provide a forum for the exercise of the right to redeem the subject land" if delinquent tax payments due are paid in a timely manner. AbarAssociates v. Luna, 870 A.2d 990, 994 (R.I. 2005) (quotingPratt v. Woolley,117 R.I. 154, 157, 365 A.2d 424, 426 (1976)). *Page 9 
Due to the fact that it constitutes "a statutory proceeding and not an ordinary civil action, the jurisdiction of the Superior Court is sharply circumscribed." Id.
It is well recognized that "one of the goals of the tax sale statute is to `afford a measure of stability to tax titles[,]'" and to remove the cloud on title created by the right of redemption.Id. (citing Picerne v. Sylvestre,122 R.I. 85, 89, 404 A.2d 476, 478 (1979)). Such a statute "strikes a fair balance between the interests of the government and private property rights — the state may move quickly to obtain by sale the taxes due, but the owner has ample opportunity to redeem his real estate" by payment of the delinquent taxes. Id. (quotingAlbertson v. Leca, 447 A.2d 383, 387 (R.I. 1982)). It also should be remembered, however, that "equity abhors and will relieve against forfeitures" because "`[t]he sale of land for taxes is the nearest approach to tyranny that exists in a free government.'"Pleasant Management, LLC v. Carrasco,870 A.2d 443, 447 (R.I. 2005) (quoting Albertson,447 A.2d at 388 and 2 Blackwell, A Practical Treatise on thePower to Sell Land for the Nonpayment ofTaxes § 728 at 683 (5th ed. 1889)).
Section 44-9-21 provides in pertinent part: "Any person may redeem by paying or tendering to a purchaser, other than the city or town, his or her legal representatives, or assigns, or to the person to whom an assignment of a tax title has been made by the city or town, at any time prior to the filing of the petition for foreclosure. . . ." It further provides explicitly that "[t]he right of redemption may be exercised only by those entitled to noticeof the sale pursuantto §§ 44-9-10 and 44-9-11." Section 44-9-21 (emphasis added).
The question as to what party or parties is entitled to notice of a tax sale is governed by § 44-9-11(a) which provides in pertinent part:
 "In case the collector shall advertise for sale any property, real, personal, or mixed, in which any person other than the person to whom the tax is assessed has an interest, it shall not be necessary for the collector to notify the interested party, except for the *Page 10 
following interested parties, provided that their interest was of record at least ninety (90) days prior to the date set for the sale: the present owner of record, mortgagees of record and mortgage assignees of record, former fee holders whose right to redeem has not been foreclosed, holders of tax title, federal agencies having a recorded lien on the subject property, holders of life estates of record, and vested remainder whose identity can be ascertained from an examination of the land or probate records of the municipality conducting the sale, and/or their assignees of record who shall be notified by the collector either by registered or certified mail sent postpaid not less than twenty (20) days before the date of sale or any adjournment of the sale, to an agent authorized by appointment or by law to receive service of process, or to the address of the party in interest set forth in the recorded mortgage document or the recorded assignment, or to the last known address of the party in interest, but no notice of adjournments shall be necessary other than the announcement made at the sale. The posting and publication of the notice of the time and place of sale in the manner provided by § 44-9-9 shall be deemed sufficient notice to all other interested parties."
Section 44-9-11(a) (emphasis added).[3]
It is clear from the foregoing that tax collectors only must notify parties with an interest in a property when that interest is recorded at least ninety days before the sale date.[4]
In Abar Associates, our Supreme Court answered the following question in the negative: "May the holder of an unrecorded interest in the property, who is clearly not entitled to receive notice of either the tax sale or the petition to foreclose, intervene after a final decree has been entered foreclosing all rights of redemption?"Abar Associates, 870 A.2d at 991. The Petitioners attempt to distinguish the instant matter from Abar Associates by pointing out that this case involves an independent action to vacate entry of a final decree foreclosing all rights of redemption rather than an attempt to intervene after foreclosure. Petitioners concede that a party *Page 11 
must have a recorded interest in order to have standing to intervene; however, they maintain that the same requirement does not apply to independent actions.
The Court finds that such a conclusion would lead to an absurd result because rather than affording a measure of stability to tax titles and ensuring that the Court's jurisdiction is sharply circumscribed, it would permit unknown, unrecorded individuals to have standing to bring independent actions to vacate foreclosure decrees after the entry of a decree foreclosing the right of redemption. Consequently, the Court rejects Petitioners' suggested broad interpretation of § 44-9-24.
In the instant matter, it is undisputed that Petitioners did not have a recorded interest in the Property during the relevant period. As a result, Petitioners did not receive, nor were they entitled to receive, notice of the foreclosure as interested parties. Considering that Petitioners did not constitute interested parties for purposes receiving notice of either the tax sale or the Petition to Foreclose the Right of Redemption, they do not have standing in the instant matter to seek to vacate the decree foreclosing the right of redemption.[5] Consequently, the action against Hayon must be dismissed as a matter of law.
 B Lack of Notice to Associates
Even if Petitioners did have standing, their claim that the tax sale itself was void because Providence did not notify Associates would have failed as a matter of law on alternative grounds. The reason for this is because Petitioners may not bring an action on another party's behalf.
Section 44-9-11(b) provides: *Page 12 
 "Only a person or entity failing to receive notice in accordance with the provisions of this section and §§ 44-9-9 and 44-9-10 shall be entitled to raise the issue of lack of notice or defective notice to void the tax sale. The right to notice shall be personal to each party entitled to it and shall not be asserted on behalf of another party in interest. If there is a defect in notice, the tax sale shall be void only as to the party deprived of adequate notice, but shall be valid as to all other parties in interest who received proper notice of the tax sale." (Emphasis added.)
The same holds true for the parties who did not receive notice of the tax sale, but to whom no such notice was required by the statute. Although it is undisputed that Providence did not notify Associates of the tax sale, the clear and unambiguous language of § 44-9-11(b) prohibits Petitioners from asserting a defect in notice to another party, in this case, failure to notify Associates. Consequently, this claim fails.
 IV Conclusion
For the foregoing reasons the Court concludes that because the Petitioners because are not real parties in interest, they do not have the requisite statutory standing to petition the Court to vacate the decree foreclosing the right of redemption. Furthermore, the Court concludes that Petitioners do not have standing to bring a claim on behalf of Associates, nor on behalf of Deutsche Bank and Ameriquest whose mortgages were recorded. Consequently, any and all claims seeking to vacate the decree foreclosing the right of redemption are hereby dismissed. Hayon's "Motion to Dismiss and Quash" is granted as to Counts II-IV of the Complaint.
Counsel shall submit an appropriate order for entry pursuant to Super. R. Civ. P. 54(b).
[1] The Court observes that because these motions are in the nature of Dispositive Motions for Summary Judgment, it is a mystery to the Court why they were placed on the Formal and Special Cause Calendar rather than on the Motion Calendar.
[2] Normally to accomplish redemption after a tax sale, the delinquent taxes, together with penalties, intervening taxes, and interest, would be delivered to the tax collector.See Section 44-9-19. LPS contends that it sent the check to Attorney Cuhna's office in response to a Statement of Redemption Costs filed in the Superior Court by Hayon as part of its Petition to Foreclose. That statement read in part: "No personal checks — Please make attorney's check, certified check or money order payable to Fernando S. Cuhna, Client's Acct. . . ." Accordingly, Petitioners aver that LPS relied in good faith upon that statement when it made the December 18, 2007 check payable to Attorney Cuhna's client escrow account.
[3] Section 44-9-10 governs the notice due to taxpayers "to whom the estate is taxed. . . ." The Petitioners do not constitute taxpayers to whom the estate is taxed; consequently, the notice provisions of § 44-9-10 do not apply to them.
[4] The statute is designed to allow lien holders of record as well as the taxpayers to avoid loss of the property by redemption.
[5] The Court observes, however, that should Petitioners be found liable under the Tax Services Agreement Outsourcing to Deutsche Bank for the amount of the outstanding loan balance, as well as applicable tax advances, penalties and interest, they may have an indemnification claim against Hayon and Attorney Cuhna under the facts as alleged.