DECISION
Raymond Blinn ("Blinn") appeals from a decision of a hearing board ("Board") formed pursuant to the Law Enforcement Officers' Bill of Rights ("LEOBR"). Blinn seeks reversal of the Board's decision to suspend him without pay for forty-five days from the City of East Providence Police Department ("EPPD"). Blinn also seeks reinstatement without loss of pay and benefits. This Court has jurisdiction pursuant to G.L.1956 §§ 42-28.6-12 and 42-35-15.
 FACTS AND TRAVEL
On May 26, 2004, Hubert J. Paquette, Chief of the EPPD ("Paquette"), issued a three-count departmental complaint ("complaint") against Blinn, a sergeant within the EPPD, alleging that Blinn had violated eight departmental rules and regulations. Specifically, the complaint charged Blinn with violating his duty not to interfere with or intimidate a witness; neglecting his duties as a superior officer for a number of reasons; and committing conduct unbecoming an officer. Paquette recommended that Blinn be *Page 2 
suspended for thirty (30) days without pay, demoted to the rank of patrolman, and placed on probationary status for a period of one (1) year.
The underlying allegations of the complaint centered on Blinn's supervision of subordinate officers as well as his professional conduct, including vocal criticism of superior officers, during and after the ensuing investigation of a February 1, 2006 arrest made by EPPD Officer Eric Lewis. Specifically, the complaint alleged, in pertinent part, that:
 "[O]n that date [February 1, 2006] you became involved in an investigation surrounding an arrest made by Officer Lewis of a Robert Fonseca for an alleged Assault with a Dangerous Weapon against a police officer. During the course of your involvement in the investigation of the above arrest and thereafter it is alleged that you engaged in a course of conduct to (a) interfere with or intimidate one or more witnesses during the taking of their statements, (b) interfere with, by verbal intimidation, one or more witnesses in order to have said witnesses change or modify their recollection of events and statements as to events that occurred on February 1, 2006 ending in the arrest of Robert Fonseca and (c) ignore certain evidence presented or available to you during the investigation in an effort to support the charges alleged by Officer Lewis against Robert Fonseca. Further, your conduct in this matter reveals that you failed to voice your concerns regarding the initial actions and arrest of Fonseca to investigating officers, inappropriately and without justification or legitimate cause openly criticized the investigation of other Department matters and made derogatory comments about officers involved in this case and without authorization inserted yourself as the lead investigator initially in the investigation of the above matter and, once involved, failed to utilize appropriate means and methods when conducting the investigation and having reports submitted and evidence collected." (See May 24, 2006 Complaint and Notice at 3-4.)
Upon receiving the complaint, Blinn filed a timely request for a hearing for which members of a Hearing Board were selected in accordance with the provisions of G.L.1956 § 42-28.6-4. The Board convened intermittently from July 3, 2006 until its final evidentiary session on November 13, 2006. *Page 3 
On December 12, 2006, the Board issued its final written decision. First, the Board unanimously found Blinn guilty of conduct unbecoming an officer for "his criticism of the Department's investigation and of the personal attacks by Sgt. Blinn against Captain Walter Barlow, Lt. Frazier, the Administration and others." (Hearing Committee Decision of Dec. 12, 2006 ("Decision") at 11-12.) As to the intimidation count, the Board found Blinn not guilty by majority vote. (Id. at 9.) Moreover, the Board, once again by majority vote, found Blinn only guilty of the violation of withholding evidence under the Neglect of Duty charge. (Id. at 10-11.) In light of these findings, the majority of the Board reached a compromise and suspended Blinn without pay for forty-five working days. (Id. at 13.) The Board, however, did not follow Paquette's recommendations to demote Blinn from sergeant to patrolman or place him on probation for one (1) year. (Id.)
In fashioning Blinn's penalty, the Board acknowledged that it considered evidence presented by EPPD of "past sustained discipline, similar patterns of inappropriate behavior, along with Sergeant's present attitude and possible contrition." (Id. at 12). Nonetheless, the Board emphasized that because EPPD failed to provide Blinn notice that he was being punished for this "past discipline and similar patterns of behavior," Blinn would not suffer the recommended punishment. (Id.) Rather, the Board acknowledged "[t]hat these omissions [of prior acts from the complaint] allowed Sgt. Blinn a second chance to remain a sergeant" and "only had limited value in showing a pattern of inappropriate behavior and a lack of remorse." (Id.) Consequently, the Board stated that it simply evaluated all the evidence presented by EPPD in formulating the *Page 4 
proper penalty, not liability, for his guilt under the Conduct Unbecoming an Officer Charge.
Nevertheless, the Board's deliberation of four specific examples of evidence, as identified by Blinn, serves as the foundation of Blinn's instant Appeal. The contested evidence consists of the following:
 Captain Walter Barlow, Jr.'s Testimony and Report
First, Blinn asserts that the Board improperly heard the testimony of Captain Walter Barlow, Jr. ("Barlow"), the officer assigned to investigate the circumstances surrounding the arrest of Robert Fonseca. Specifically, Blinn contests the Board's decision to allow Barlow to testify to the written statements of witnesses found in his eighty-three (83) page report of the investigation. These same witnesses would later testify on EPPD's behalf. At the hearing, Blinn's counsel presumably objected to Barlow's testimony on the grounds that such testimony was inadmissible hearsay. (Tr. 8/8/06 at 109.) The Board admitted the testimony as well as Barlow's investigative report and the witness statements contained therein. (Tr. 8/8/06 at 109-111.)
 Captain Glen T. Hogan's Testimony Regarding Blinn's Letter Criticizing Lieutenant Stephen Enos
Second, Captain Glen T. Hogan ("Hogan") testified to a disciplinary review he made concerning a letter drafted by Blinn, requesting an investigation of Lieutenant Stephen Enos ("Enos") for the unrelated April 15, 2006 arrest of Edmund Taylor. (Tr. 10/4/06 at 138-148.);see also (EPPD Exhibits 24, 25.) Hogan told the Board that in the letter, Blinn used strong and inappropriate words to criticize Enos' competency as a superior officer. (Tr. 10/4/06 at 142-143.) Hogan also testified to reviewing Enos' *Page 5 
response to Blinn's letter. (Tr. 10/4/06 at 141.) Ultimately, EPPD did not perform an investigation of Enos or reprimand Blinn for the letter he wrote. (Id.)
 Chief Hubert J. Paquette's Testimony and Exhibits Regarding Officer Craig Sroka
Next, Chief Paquette testified to incidents that occurred two years prior to the Fonseca arrest and investigation where Blinn had made inappropriate comments regarding Patrol Officer Craig Sroka ("Sroka"). (Tr. 10/16/06 at 81.) In fact, Paquette testified that Blinn called Sroka "a rat" in front of a number of officers. (Id.) Moreover, EPPD presented an e-mail sent by Blinn to Captain Hogan and Lieutenant Richard K. Frasier ("Frasier") and in which Blinn accused Sroka of failing to carry out his duties. (EPPD Exhibit 32). In the e-mail, Blinn also recommended that EPPD conduct a full investigation of Sroka, as well as suggested termination of Sroka for "incompetence and cowardice" if the officer was found to have refused to arrest a suspect. (Id.) Frazier investigated the matter and determined Blinn's allegations unfounded. EPPD did not take any corrective measures against Blinn for his comments or the e-mail about Sroka.
 Sergeant Blinn's Three Letters to East Providence City Manager, Assistant City Manager, and City Council
Finally, Blinn asserts that the Board improperly considered three letters written by Blinn in which he criticized the EPPD. The first letter was sent to Mr. William Fazioli, City Manager, on September 14, 2005. (EPPD Exhibit 29.) Blinn sent the second letter to Mr. William Conley, Assistant City Manager, on February 17, 2006. (EPPD Exhibit 30.) Finally, the third letter was sent on March 21, 2006 to the East Providence City Council. (EPPD Exhibit 31.) However, EPPD only submitted the latter two letters to the Board after Blinn raised objections to the introduction of all three letters on the grounds that *Page 6 
they exceeded the scope of the charges and that the letters enjoyed First Amendment protection. The Board allowed the two letters, written after the Fonseca arrest, into evidence. In both letters, Blinn criticized EPPD's investigation of him for his involvement in the Fonseca arrest. In the letter to the City Council, he directly accused his superior officers of "throwing him under the bus" and running a "smear campaign" against him. (EPPD Exhibit 31.)
On January 11, 2007, Blinn filed the instant Appeal to which EPPD objects. Decision is herein rendered.
 STANDARD OF REVIEW
"The Law Enforcement Officers' Bill of Rights, enacted in 1976, is the exclusive remedy for permanently appointed law-enforcement officers who are under investigation by a law-enforcement agency for any reason that could lead to disciplinary action, demotion, or dismissal." City of EastProvidence v. McLaughlin, 593 A.2d 1345, 1348 (R.I. 1991) (citingLynch v. King, 120 R.I. 868, 870 n. 1, 391 A.2d 117, 119 n. 1 (1978)). Under LEOBR, any law enforcement officer facing charges that may result in punitive action may request a hearing before a committee comprised of three active law enforcement officers. G.L. 1956 §§ 42-28.6-1 and42-28.6-4. This hearing committee has broad discretion to sustain, modify, or reverse the charges. See § 42-28.6-11; see also Culhane v.Denisewich, 689 A.2d 1062, 1064-65 (R.I. 1997) (citing State Dep't ofEnvtl. Mgmt. v. Dutra, 401 A.2d 1288 (1978) (citations omitted)). Moreover, the committee is empowered to consider all reasonable and probative evidence presented it. Sec. 42-28.6-6. *Page 7 
Officers may appeal adverse decisions by the hearing committee to the Superior Court. Sec. 42-28.6-12. For the purpose of such an appeal, the committee is "deemed an administrative agency and its final decision shall be deemed a final order in a contested case within the meaning of §§ 42-35-15 and 42-35-15.1. Sec. 42-28.6-12(a). Accordingly, this Court must apply the standard of review as set forth in § 42-35-15(g):
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing an agency decision pursuant to § 42-35-15, the Court may not substitute its judgment for that of the agency with respect to credibility of witnesses or the weight of evidence concerning questions of fact. Ctr. For Behavioral Health, R.I., Inc. v. Barros, 710 A.2d 680,684 (R.I. 1998). As such, the Court's review is confined to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision."Johnston Ambulatory Surgical Assocs., Ltd. V. Nolan, 755 A.2d 799, 805
(R.I. 2000) (quoting Barrington Sch. Comm. *Page 8 V. R.I. State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992));see also Newport Shipyard v. R.I. Comm'n for Human Rights, 44 A.2d 893,896-97 (R.I. 1984). Competent or substantial evidence is that which a reasonable mind might accept to support a conclusion. NewportShipyard, 44 A.2d at 897 (quoting Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). The Court "may reverse [the] findings of the administrative agency only in instances where the conclusions and the findings of fact are totally devoid of competent evidentiary support in the record, or from the reasonable inferences that might be drawn from such evidence." Bunch v. Bd. Of Review,690 A.2d 335, 337 (R.I. 1997) (citations omitted). In this respect, the Court's review is both limited and highly deferential.Culhane, 689 A.2d at 1064. However, the Court reviews questions of lawde novo. Narragansett Wire Co. v. Norberg, 118 R.I. 596, 376 A.2d 1
(1977).
 DISCUSSION
In the instant Appeal, Blinn argues that the Board committed reversible error, pursuant to G.L.1956 § 42-35-15(g), by fashioning his suspension of forty-five days without pay through its consideration of improperly admitted testimony and documentation.[1] Accordingly, Blinn asserts that this evidence served to both inflame and confuse the Board in its determination of its punishment of him. He insists EPPD had never disciplined him for criticizing both superior and inferior officers in the past. Because these prior criticisms or unbecoming behavior had never been punished, he believes, the Board should not have considered them in the penalty phase. In fact, Blinn *Page 9 
concedes that if EPPD had previously disciplined him for these criticisms, the records of these "bad acts" would have been admissible for fashioning a penalty. He contends, therefore, that the Board's consideration of disputed evidence fell well beyond the scope of the complaint and the constitutional or statutory notice parameters of LEOBR. Lastly, Blinn argues that because of the Board's consideration of this improper evidence, his punishment is clearly arbitrary and capricious.
In its objection to the instant Appeal, EPPD asserts that the introduction of the disputed evidence was authorized by § 42-28.6-6(a) because the evidence possessed probative value for the purpose of assessing Paquette's recommended discipline. Additionally, EPPD contends that the Board could consider this evidence, interpreting the holding inZincone v. Mancuso, 523 A.2d 1222, 1225 (R.I. 1987), to provide that the Board can always consider evidence of similar but unrelated misconduct, even in the absence of prior discipline, when fashioning a penalty under LEOBR for a single act of alleged misconduct.[2] Furthermore, EPPD asserts that the Board acted within the scope of its authority because the Board has the statutory right, pursuant to § 42-28.6-11, to modify the recommended sanctions. Finally, EPPD argues that the Board's decision was rational, logical, and supported by a reasoned explanation so as to preclude the Court *Page 10 
from finding the Board's decision arbitrary and capricious. The Court will address the admissibility of the evidence and penalty in turn.
 Admissibility of Captain Barlow's Testimony
Blinn contends that the Board's decision to allow Barlow to testify to witness statements contained in his investigative report when EPPD intended to call these same witnesses later in the hearing was improper because such evidence was inadmissible hearsay and highly prejudicial.See R.I.R. Evid. 801(c) and 403. Blinn also argues that the Board's consideration of the investigative report and witness statements contained therein was improper. This Court finds that the Board did not abuse its discretion.
Even if Barlow's testimony constitutes hearsay, such hearsay evidence is admissible in administrative hearings. DePasquale v. Harrington,599 A.2d 314, 316 (R.I. 1991). In DePasquale, the Supreme Court has reasoned that:
 [t]he admission of hearsay evidence in an administrative forum is reflective of the traditional division of the function between judge and jury. Many of the rules surrounding the exclusion of hearsay in jury trials are meant to prevent juries, uninitiated in the evaluation of evidence, from hearing unreliable or confusing testimony and rendering a verdict based on such evidence. See McCormick on Evidence, §§ 351-2 at 1006-12. Such protection is far less necessary when evidence is presented to a judge sitting without a jury or, as in this case, a hearing officer with substantial expertise in the matters falling within his or her agency's jurisdiction.
Id. See also 2 Charles H. Koch, Jr., Administrative Law andPractice, § 5.52[3](a) (2d ed. 1997) ("The general rule remains that hearsay evidence is admissible in administrative hearings.").
Moreover, § 42-28.6-6(a) provides the hearing committee with the discretion to admit evidence normally inadmissible under criminal or judicial civil proceedings. Section 42-28.6-6(a) states that: *Page 11 
 [e]vidence which possesses probative value commonly accepted by reasonable and prudent men in the conduct of their affairs shall be admissible and shall be given probative effect. The hearing committee conducting the hearing shall give effect to the rules of privilege recognized by law, and may exclude incompetent, irrelevant, immaterial, and unduly repetitious evidence. All records and documents which any party desires to use shall be offered and made part of the record.
In evaluating the similarly-worded § 42-35-10(a)[3] of the Rhode Island Administrative Procedures Act, the Rhode Island Supreme Court has held that a reasonably prudent man in the conduct of his affairs, or more specifically "a hearing officer with `substantial expertise in matters falling within his or her agency's jurisdiction[,]' should be able to judge whether evidence offered is trustworthy, credible, and probative regardless of whether it is hearsay." Foster-Glocester Reg'lSch. Comm. v. Bd. Of Review, 854 A.2d 1008, 1019 (R.I. 2004) (quotingDePasquale, 599 A.2d at 316). Accordingly, the Supreme Court has acknowledged that officers on hearing committees have the capability and experience within their expertise to examine the reliability of evidence which lay jurors lack and which the rules of evidence do not contemplate. DePasquale, 599 A.2d at 317. Accordingly, this Court cannot find that the Board improperly admitted Barlow's testimony regarding witness statements contained within his investigative report of the February 1, 2006 arrest of Fonseca, which was later admitted as an exhibit itself. The Board, acting with reasonable prudence and within its *Page 12 
members' expertise, considered his testimony for what the Board considered the probative purpose of "get[ting] a picture of what [Barlow] did" in his investigation. (Tr. 8/8/06 at 111.) This Court will not second-guess the Board in this determination.
Furthermore, the record evidences that the Board considered the possible duplicitous nature of Barlow's purported testimony as well as its probative value for the purpose of establishing the background of Barlow's investigation. The Board informed EPPD that "[t]he only thing I ask is, this witness, we don't have to really belabor each point too long, since we're going to be bringing [the witnesses] in . . . but without slowing things up too much, since the witnesses are going to testify on their own." (Tr. 8/8/06 at 111-112.) Clearly, the Board evaluated the nature of the testimony and found, based on their expertise on the nature of investigations of this type, the evidence probative while still protecting Blinn from prejudicial use of the evidence. Moreover, the Board's admission of Barlow's Investigative Report, including witness statements, was highly probative of the charges raised against Blinn in the complaint. Even though the report, as well as witness statements included within, may have constituted hearsay, the substantial rights of Blinn were not prejudiced.[4]
Finally, this Court cannot find that the Board exceeded the scope of its procedural authority or violated any constitutional or statutory provisions by admitting the investigative report. Section 42-28.6-5(c) provides that: *Page 13 
[n]ot less than ten (10) days prior to the hearing date, the charging law enforcement agency shall provide to the law enforcement officer:
 (i) A list of all witnesses, known to the agency at that time, to be called by the agency to testify at the hearing;
 (ii) Copies of all written and/or recorded statements by such witnesses in the possession of the agency; and
 (iii) A list of all documents and other items to be offered as evidence at the hearing.
At the hearing, Blinn acknowledged that he had received these documents from EPPD. Furthermore, Blinn never claimed that he received them outside the limitations period under § 42-28.6-5(c) and other provisions of LEOBR. See generally § 42-28.6-5. Consequently, the Board acted within its scope of authority when it admitted Barlow's testimony and timely noticed investigative report and witness statements. The Board did not violate any constitutional or statutory provisions within the LEOBR. Therefore, the Board did not abuse its discretion or make an error of law by admitting Barlow's testimony and report into the record.
 Admissibility of Evidence of Blinn's Unrelated and Unpunished Acts of Criticism and Inappropriate Behavior
Next, Blinn contends that the Board's consideration of testimony and documents regarding Blinn's unrelated and unpunished criticisms of Lt. Enos, Officer Sroka, and the police administration in the letters to East Providence governmental officials exceeded the scope of the hearing and departmental complaint. According to Blinn, the Board, therefore, violated the statutory notice provision of the LEOBR, see §42-28.6-4(b), as well as improperly imposed an arbitrary and capricious penalty on Blinn based on inadmissible character evidence. This Court disagrees. *Page 14 
Section 42-28.6-4(b) of the LEOBR sets forth the notice a law enforcement officer is obligated to receive from a complaining police department. The section provides, in pertinent part, that:
 [n]otice under this section shall be in writing and shall inform the law enforcement officer of the following:
 (i) The nature of the charge(s) against him or her and, if known, the date(s) of the alleged offense(s);
 (ii) The recommended penalty
Section 42-28.6-4(b) thereby requires the department to provide the officer with a list of particular examples of misconduct upon which the charges are directed. However, the same section does not directly impose a requirement that the Board consider only the complaint's "list of particulars" in fashioning a penalty. Even this State's criminal sentencing guidelines, akin to the penalty phase here, do not impose such strict or limited parameters as to what a Court can consider in formulating a proper penalty upon a conviction. See § 12-19.3-1, etseq. (legislature enacted sentencing standards "to create a sentencing process which will allow for judicial consideration of mitigating and aggravating circumstances unique to the particular defendant and crime."); see generally 2 Charles H. Koch, Jr., Administrative Law andPractice, § 5.52[3](a) (2d ed. 1997) (quoting United v. J.B. WilliamsCo., Inc., 498 F.2d 414, 439 (2nd Cir. 1974) ("`The enormous range of penalties available to the district court in the usual civil penalty case [arising from administrative agency complaint] renders it of critical importance that the court have adequate information in the issues to be considered in assessing the penalty.'")). Courts often consider a number of aggravating and mitigating factors in sentencing that the rules of evidence preclude from the liability stage. See, e.g., State v. Thornton, 800 A.2d 1016
(R.I. 2002) (court considers numerous factors, including *Page 15 
societal deterrence, appropriateness of crime, employment background, and potential for rehabilitation); State v. Furtado, 774 A.2d 38 (R.I. 2001) (same); State v. Bettencourt, 766 A.2d 391 (R.I. 2001) (same).See also State v. Mattatall, 603 A.2d 1098 (R.I. 1992) (fourteen separate incidents of misconduct between vacation of conviction and retrial warranted enhanced sentence); State v. Huey, 505 A.2d 1242, 1245
(Conn. 1986) ("To arrive at a just sentence, a sentencing judge may consider information that would be inadmissible for the purpose of determining guilt.").
Other provisions in LEOBR support the proposition that the hearing committee could consider character evidence normally inadmissible under Rule 404(b) of the Rules of Evidence. For example, § 42-28.6-11 empowers hearing boards with the discretion "to sustain, modify in whole or in part, or reverse the complaint or charges of the investigating authority, as provided in § 42-28.6-4." In Culhane, the Supreme Court interpreted this section to give "[t]he [hearing] committee . . . great discretion to modify in whole or in part the recommendedsanctions presented by the charging authority." 689 A.2d at 1064-65
(citations omitted) (italics added). Furthermore, the Board, pursuant to § 42-28.6-6(a), has the authority to admit "[e]vidence which possesses probative value commonly accepted by reasonable and prudent men in the conduct of their affairs." Clearly, the Board has great discretion in fashioning an appropriate penalty from all the circumstances it finds relevant to an officer's actual violations.
Moreover, this Court would reach an absurd and unreasonable result if it construed LEOBR to unconditionally preclude hearing committees from considering highly probative evidence, even in the form of unpunished "prior bad acts," while still permitting consideration of normally inadmissible hearsay evidence. Am. Condo. Ass'n *Page 16 v. IDC, Inc., 844 A.2d 117, 127 (R.I. 2004) (quoting Hargreaves v.Jack, 750 A.2d 430, 435 (R.I. 2000) ("[I]t is a well-known maxim of statutory interpretation that this Court `will not construe a statute to reach an absurd [or unintended] result.'")). In fact, the language of § 42-28.6-6 plainly demonstrates the statutory authority given to hearing committees to filter out immaterial and other improper evidence.Id. (quoting Skaling v. Aetna Insurance Co., 742 A.2d 282, 290 (R.I. 1999) ("If the language of a statute is clear on its face, then its plain meaning must generally be given effect.")). The legislatively acknowledged "substantial expertise" of a hearing committee in the determination of proper police conduct clearly contemplates its ability to consider evidence of similar but unpunished "bad acts" in formulating meaningful penalties for violations of departmental rules while still protecting the rights of the officer. Therefore, § 42-28.6-6(a) also evinces the Legislature's belief in the committee's ability to exclude evidence that a reasonably prudent man in the conduct of police affairs would find unfairly prejudicial in devising a proper punishment.
It is equally evident that the Legislature did not intend that the hearing committee utilize the same evidence for establishing liability as it does in the penalty phase; the notice requirements under §42-28.6-4(b) demand notice of the actual charges and events lending themselves to those charges. This Court cannot ignore this difference in the statute's language. Consequently, without an explicit exclusion for Rule 404(b)[5] evidence in LEOBR, this Court must find the Legislature intended that evidence of prior, *Page 17 
uncharged acts, either punished or unpunished, would be admissible in LEOBR penalty proceedings if reasonably prudent men in the conduct of their affairs would determine such evidence probative in formulating a proper penalty. See id.; (citing In re Estate of Gervais, 770 A.2d 877,880 (R.I. 2001) (per curiam) (quoting State v. Pelz, 765 A.2d 824,829-30 (R.I. 2001) ("In construing statutes, this Court `adheres to the basic proposition of establishing and effectuating the intent of the Legislature [, * * * which] is accomplished from an examination of the language, nature, and object of the statute.'"))).
In the instant matter, the Board did not exceed the scope of the hearing or violate the notice provisions of § 42-28.6-4 in considering the testimony and exhibits pertaining to Blinn's criticisms of Enos and Sroka. First, the Board's Final Decision clearly states that the Board did not consider the disputed evidence for the purpose of finding liability because the "charging letter did not specify this and other certain acts of misconduct." (Decision at 12.) The Board further explained that this evidence "could not be considered in the formally [sic] charges and only had limited value in showing a pattern of inappropriate behavior and a lack of remorse." (Id.) The Board actually admitted that "[t]hese omissions [from the charges] allowed Sgt. Blinn a second chance to remain a sergeant." (Id.) As such, this Court cannot find in any manner that the Board found Blinn liable for acts not included within the "list of particulars" contained in the Complaint as to violate § 42-28.6-4.
Second, this Court cannot find that the Board's use of the disputed evidence for the limited purpose of fashioning an appropriate penalty constituted an error of law or an abuse of discretion. Foremost, Blinn, in the instant Appeal, does not attack the Board's unanimous finding of guilt under the Conduct Unbecoming an Officer charge for his *Page 18 
unprofessional and derogatory language and unwarranted criticisms of EPPD and its officers. The Board, therefore, could impose a penalty on Blinn; one that the Board believed would ensure that Blinn act in accordance with departmental rules and keep his "hard earned [sergeant's] stripes" in the future. (Id.) This penalty could not be fashioned, however, in a vacuum.
Thus, the Board turned to Blinn's similar but unrelated and unpunished criticisms and attacks on other officers to evaluate whether the events that encompassed the guilty finding were the first of their kind or whether they represented a pattern of behavior. In the hopes of presenting an appropriate penalty, the Board carefully considered and compartmentalized, as substantiated by its Decision, highly relevant as well as highly prejudicial evidence. See § 42-28.6-11(b).[6] This Court cannot find that this careful consideration of evidence, which the Board found probative under § 42-28.6-6(a), and which a court would deliberate on in a criminal sentencing context, represented an abuse of discretion or was outside the scope of the Board's authority under the LEOBR. See § 42-28.6-1, et seq.
 Whether the Penalty Was Arbitrary and Capricious
This Court finds that the Board's suspension of Blinn for forty-five days without pay was neither arbitrary nor capricious. Section42-35-15(g) of the Rhode Island General Laws sets forth the parameters the Court faces in reviewing appeals from agency decisions. The Court may affirm, remand, or reverse should it find that the agency's decision was, inter alia, "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec.42-35-15(g)(6). Furthermore, the *Page 19 
court will uphold administrative decisions "as long as the administrative interpreters have acted within their authority to make such decisions and their decisions were rational, logical, and supported by ample evidence." Goncalves v. NMU Pension Trust, 818 A.2d 678, 682-83
(R.I. 2003) (citing Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181
(1st R.I. 2003)). Finally, the decision will be neither arbitrary nor capricious "when it is possible to offer a reasoned explanation, based on evidence, for a particular outcome."Goncalves, 818 A.2d at 683 (quoting Coleman v. Metro. Life Ins.Co., 919 F.Supp. 573, 580 (D.R.I. 1996)).
In the instant action, the Board unanimously found Blinn guilty of Conduct Unbecoming an Officer on the grounds that Blinn became "defensive, obstructive, and unfairly critical of others" during the investigation surrounding the Fonseca arrest. (Decision at 12.) The Board considered this behavior "inconsistent with that [required] of a supervisor." (Id.) Blinn does not dispute this finding as improper. Rather, he asserts that the Board acted outside its authority in considering inadmissible evidence and as a result, irrationally and illogically suspended him for forty-five days without pay. First, this Court has already determined that the Board acted within its authority in considering the evidence disputed by Blinn. See supra; see alsoGoncalves, 818 A.2d at 682-83. Yet, without even considering this disputed evidence, the Board still offered evidence that both supports its finding of liability and the penalty it imposed.
It is obvious from the record that the three members of the Board did not entirely agree on the punishment despite unanimously holding Blinn liable. For example, one member recommended a five day suspension whereas another requested that the Board affirm Paquette's recommended punishment of thirty days unpaid suspension, demotion *Page 20 
of rank to patrolman, and probation for a one-year period. (Decision at 13.) The Chairman of the Board sought a compromise between these two extremes. (Id.) On one hand, he acknowledged Blinn's violation of departmental regulations and the need to deter similar future conduct. (Id.) On the other hand, the Chairman remarked that Paquette's recommendation was excessive on the grounds that EPPD failed to formally charge Blinn on all of his purported misconduct. (Id.) In seeking a compromise, the Chairman simply recommended a forty-five day suspension without pay. The member who supported Paquette's recommendation reluctantly conceded to the penalty suggested by the Chairman. (Id.) The third Board member, however, thought the Chairman's suggestion extreme and did not support it. (Id.) Consequently, the Board, by a majority vote and through compromise, imposed the forty-five day suspension without pay on Blinn. (Id.)
From the record, this Court finds that competent evidence exists sufficient to sustain the penalty imposed. See Newport Shipyard v. R.I.Comm'n for Human Rights, 44 A.2d 893, 897 (R.I. 1984). The record is replete with competent evidence, as well as a reasoned explanation, in the Decision as to why the Board imposed a modified and lesser penalty on Blinn. See Culhane, 689 A.2d at 1064-65 (citations omitted) ("The [hearing] committee has great discretion to modify in whole or in part the recommended sanctions presented by the charging authority."). The record also evidences the efforts taken by the Board, particularly the Chairman, to fashion a penalty through compromise. See Thornton v.Commissioner of Dep't of Labor Indus., 190 Mont. 442, 445 (Mont. 1980) (affirming commissioner's decision to compromise penalty). This Court finds that the Board's penalty was neither arbitrary nor capricious. *Page 21 
 CONCLUSION
After reviewing the entire record, this Court holds that the Board's findings and decision are not clearly erroneous and are supported by reliable, probative, and substantial evidence. The decision of the Board was within its authority, not contrary to law, and neither arbitrary, capricious, nor representative of an abuse of discretion. Lastly, the substantial rights of Blinn were not prejudiced. Accordingly, the decision to suspend Blinn without pay for forty-five days is affirmed.
Counsel will file an order consistent with this decision.
[1] Blinn does not argue that the Board found him liable based on the consideration of improperly admitted testimony and documentation. He acknowledges in his supporting memorandum that the Board clearly stated that the disputed evidence had no role in their determination of Blinn's liability. Ultimately, Blinn's appeal centers simply on the Board's use of extrinsic evidence in determining his punishment.
[2] In Zincone, the Rhode Island Supreme Court held that under §42-28.6-4(b), a police department could consolidate separate but unrelated violations of departmental regulations within one complaint in order to only have one hearing on the complaint. 523 A.2d at 1225. The Court found that a separate hearing for each unrelated charge was not necessary or intended by the Legislature in LEOBR. Id. As such,Zincone stands for the proposition that a Hearing Board may consider liability on unrelated charges within one hearing if the departmental complaint provides the officer with adequate notice. Id. The Supreme Court did not hold, as asserted by EPPD in its objection, that the repeated nature of misconduct warranted its automatic admissibility for determining liability and penalty despite the absence of this unrelated conduct in the "list of particulars." Rather, the Board must first determine if unlisted misconduct is probative for the purpose of determining a penalty under § 42-28.6-6(a). See infra.
[3] Section 42-25-10(a) provides, in pertinent part, that:
 [i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded. The rules of evidence as applied in civil cases in the superior courts of this state shall be followed; but, when necessary to ascertain facts not reasonably susceptible to proof under those rules, evidence not admissible under those rules may be submitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. Agencies shall give effect to the rules of privilege recognized by law. Objections to evidentiary offers may be made and shall be noted in the record."
[4] This Court need not address the issue of whether Barlow's testimony or report was hearsay. However, this Court still finds that, at the very least, Barlow's testimony was not hearsay. The Board expressly stated that the Board evaluated his testimony not as "proof of the matter asserted" but instead, as evidence of how Barlow conducted his investigation. In any case, the testimony, even if considered for the purpose of asserting the truth of matter for which it was offered, was highly relevant to the charges listed in the complaint and thus still admissible under § 42-28.6-6(a) and the less stringent rules governing the admissibility of hearsay in administrative hearings.
[5] Rule 404(b) of the Rhode Island Rules of Evidence provides that:
 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable.
[6] Section 42-28.6-11(b) provides, in pertinent part, that: [a]ny decision, order, or action taken as a result of the hearing shall be in writing and shall be accompanied by findings of fact. The findings shall consist of a concise statement upon each issue in the case.

 *Page 1